UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60088-CR-COHN/SELTZER

UNITED STATES OF AMERICA, §
§
    PLAINTIFF, §
§
V. §
§
§
BENJAMIN RAND, §
§
    DEFENDANT. §
§

MOTIONS TO EXCLUDE, AND
TO COMPEL SOP,
AND
FOR EVIDENTIARY HEARING

    COMES NOW the Defendant, BENJAMIN RAND, by and through undersigned counsel, and files this, his MOTIONS TO EXCLUDE, TO COMPEL SOP, AND FOR EVIDENTIARY HEARING, and in support thereof, would state as follows:

    1.    This case involves large amounts of data allegedly recovered from the cellular telephones and memory cards of the Defendant and the alleged victims, C.R. and A.G., as well as the Sprint account of the family of the defendant (the "cloud") received via government subpoena. Presumably these materials refer to Count 7 of the Superceding Indictment. The recovered data is irrelevant to these proceedings.

2. Defendant moves to exclude EVIDENCE from use at trial because the investigating officers adulterated the EVIDENCE during their investigation and failed to duplicate EVIDENCE *before* mishandling it. None of the best practices or even the standard operating procedures for the institutions at issue were followed. The defendant moves the Court to compel the government to produce its applicable standard operating procedures for the appropriate institution in place prior to the instant investigation.

3. Interestingly, it appears the government decided finally to create mirror images of the items at issue a full four months after the numerous modifications and corruptions had been completed. Better late than never is not applicable here. Obviously someone decided to start using best practices and SOP after the fact. The general response has been that no defense lawyers have ever hired experts to review the forensic examinations previous to this case. On August 22, 2011, at a forensic review of the evidence involving expert Aaron Weiss and Counsel, we were provided a mirror image of C.R.'s telephone that was created on August 16, 2011. No information was made available as to why no mirror image was created on March 20, 2011; where the phone was, or who had it between March 20, 2011 and August 16, 2011; and what data was adulterated between these dates.

4. The investigating officers in this matter ran EVIDENCE through data extraction technology, commonly known as "Cellebrite," in an attempt to extract evidence against Defendant. However, the officers did not create a mirror image (or, duplication and verification of duplication in forensic parlance) of EVIDENCE before beginning the extraction process, and, as a result, a significant corruption of data occurred. For example, the officers claimed to have recovered 241 messages from Defendant's cell phone during

2

their first attempt at data extraction; by their second attempt at data extraction, the officers only found 58 messages.  Thus, the officers lost at least 75% of the text message data on Defendant's phone between the two extractions.  There is (now "was") significant *Brady* material here that needed to be recovered; for example text messages telling the complaining witness to stop contacting the Defendant and to stop sending unsolicited photos of herself.

     5.     Even after these two extractions, the officers found no images on any of the items.  Instead, the officers sent the items to a third-party, the Internet Crimes Against Children Task Force (ICAC), to attempt a third extraction.  ICAC allegedly recovered EVIDENCE after a third extraction, but at that point, EVIDENCE had been altered at least twice, and was far removed from the original set of data in place when the alleged crime was committed.  There apparently now is a mirror image AFTER the three extractions so it is impossible to say the phone and SD card seized from the defendant is the same phone and SD card sitting in the evidence bag at this time.  Cellular telephones are commonly "wiped" from remote locations; additionally they can be "uploaded" from remote locations; thus, SOP and best practices call for a complete removal of a cellular device from internet or telephone service to maintain the integrity of the data on the cellular telephone and SD card.  This was not done either in the instant case on any of the electronic media at issue.

     6.     As a result, EVIDENCE is inadmissible, because there is no way to authenticate it as being what it is claimed to be.  *See* Fed.R. Evid. 901(a).  In order to authenticate evidence, and thus, demonstrate its admissibility, the party seeking to introduce the evidence must put forth a *prima facie* case through, for example, the testimony of witnesses, that the proffered evidence is what it purports to be.  *U.S. v. Lanzon*, No. 09-14535 (11th Cir. May 4, 2011); *see*

*also U.S. v. Shabazz*, 724 F.2d 1536, 1539 (11th Cir. 1984) (holding that the standard for finding sufficient accuracy to warrant admissibility is whether there is a reasonable probability that the evidence was not adulterated).

7. Because it is now impossible for the prosecution to provide sufficient evidence to support a finding that EVIDENCE is what they claim it to be, EVIDENCE must be excluded as inadmissible.

8. Furthermore, EVIDENCE is inadmissible as violating the best evidence rule, which requires the proponent to produce the original to prove the contents of a writing, recording, or photograph. *See U.S. v. Howard*, 953 F.2d 610, 612 n.1 (1992). A duplicate of the original is admissible "unless (1) a genuine question is raised as to the authenticity of the original, or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed.R. Evid. 1003. Because there is a genuine question[1] as to what was contained within the original, EVIDENCE cannot be admitted as a duplicate.

9. Defendant further contends that EVIDENCE should be excluded because, given the data loss [and/or the break in the chain of custody when the investigating officers returned C.R.'s cell phone to her in between data extraction attempts], the prosecution cannot establish a continuous chain of custody. The prosecution cannot show that the data extracted is the same set of data alleged to have been in Defendant's possession, or that EVIDENCE is in substantially the same condition now as when Defendant allegedly possessed it. *See, e.g., United States v. Garcia*, 718 F. 2d 1528, 1534 (11th Cir. 1983).

10. Finally, Defendant seeks exclusion of EVIDENCE on grounds of spoliation of evidence. In addition to exclusion of certain evidence, sanctions

for spoliation of evidence may include: (1) dismissal of the case; (2) exclusion of expert testimony; or (3) issuance of jury instructions that raise a presumption against the spoliator.  *See Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005).

6. WHEREFORE, DEFENDANT BENJAMIN RAND, respectfully moves this Honorable Court to grant the foregoing motions.

> Omar F. Guerra Johansson, P.A.
> Counsel for Defendant Benjamin Rand
> Wells Fargo Tower, Suite 700
> One East Broward Boulevard
> Fort Lauderdale, Florida 33301
> Telephone: (954) 745-7517
> Lawfirm@LauderdaleCriminalLawyer.com
>
>  /s/ Omar F. Guerra Johansson
> By:   Omar F. Guerra Johansson, Esquire
>         Florida Bar No. 18141

CERTIFICATE OF SERVICE & CONFERENCE

I certify that on August 23, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and conferred with Assistant United States Attorney; the AUSA is opposed.

> /s/ Omar F. Guerra Johansson
> Omar F. Guerra Johansson, P.A.

---

[1] The Committee Notes to Rule 1003 state that the Committee approved the Rule "with the expectation that the courts would be liberal in deciding that a 'genuine question is raised as to the authenticity of the original.'"

5

Counsel for Defendant Benjamin Rand