UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-60088- CR-COHN/SELTZER

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| PLAINTIFF, | § |
| | § |
| VERSUS | § |
| | § |
| BENJAMIN RAND | § |
| | § |
| DEFENDANT. | § |
| | § |

OBJECTIONS TO THE REPORT AND RECOMMENDATION (DE 78)
AND
MAGISTRATE'S ORDER (DE 79)

COMES NOW the DEFENDANT BENJAMIN RAND, by and through undersigned counsel, files these OBJECTIONS TO THE REPORT AND RECOMMENDATION (DE 78) AND MAGISTRATE'S ORDER (DE 79), and as grounds states as follows:

The Defendant Benjamin Rand objects to each and every factual finding and legal conclusion in the Report and Recommendation (DE 78) and the Magistrate's Order (DE 79), and adopts his objections to date, including the objections at the evidentiary hearing.

Specifically, without prejudice to previous and further objections, Defendant Benjamin Rand files the following objections:

A.   In docket entry 50 the defendant moves to dismiss the images at issue because they fail to meet the definition of a minor engaged in sexually explicit conduct. In conjunction with docket entry 50, the defendant also moved to exclude the images as failing to meet the relevance standards in docket entry 51. The defendant objects to the failure of the magistrate court to conduct an evidentiary hearing on each and every of the

images that the government intends to introduce into evidence. An individualized assessment must be done for each photo at issue. The defendant contends that it will become quickly obvious to the District Court that many of the images fail to meet even the basic relevance standard for this case.  Additionally, it will become clear that hardly any of, if not none, of the images are actually depictions of a minor engaged in sexually explicit conduct. Without such an evidentiary hearing, there will be a morass of sidebars and voir dire questionings before the district court to properly analyze these objections, all before the jury.  The government consistently says there are hundreds of photos at issue.

      B.      For docket entry 49, the defendant specifically asked for the standard operating procedures of the Internet Crimes Against Children (ICAC) unit of the Broward Sheriff's Office. During the testimony, it became clear that a draft version of the standard operating procedures does exist. It is relevant to cross-examine the government's experts and witness about their failure to follow these procedures as well as the Pembroke Pines Police Department failure to follow the procedures.  It is noteworthy that ICAC trained the PPPD officers how to use the Cellibrite machine to upload data from cell phones and SD cards.  The government admitted that it failed to analyze the SD card of the defendant with a "write-protected" computer which means the files can be crossed or comingled with previous data of other child pornography cases, failed to secure the cellular telephone (with the SD card inserted) either from the internet or cell phone towers, which means the device is still sending and receiving data after seizure, used a USB drive (commonly known as a "thumb dive") that was quick formatted instead of complete or long formatted to truly erase the thumb drive of previous data, which previous data

included child pornography from previous cases (including CR's cell phone and SD card). Even though the common user cannot see the images or files, the government's expert testified that the images and data remain unless a complete format on the thumb drive was completed. The PPPD officer admitted it was not done this time nor the previous 150 times for other child pornography cases. Who knows what the defendant's original cell phone and SD card actually looked like, but a single thumb drive shared the data of four electronic media from this case alone without proper erasing after each event. The defendant objects to the failure of the magistrate court to order this SOP document produced and also notes that it objects to the evidentiary hearing on the issue of excluding data for lack of authentication because the defense was not allowed to use the standard operating procedures to cross-examine the government's experts and witnesses. Federal Rule of Evidence 901(b)(9) specifically says that the government must show the court that its process produces an accurate result. This SOP is its "process" and should be discoverable.

   C. In docket entry 52 the defendant moved to exclude evidence for lacking authentication and chain of custody and violating the best evidence rule. Federal Rule of Evidence 901(b)(9) says that evidence describing a process or system used to produce a result and show that the process or system produces an accurate result is an example of authentication.

  At the evidentiary hearing, there were various generalizations about the state of the adulterations in this case for the defendant's phone and SD card and CR's phone and SD card; however, an evidentiary hearing must be conducted on a photo by photo, or government exhibit by government exhibit basis. Without a specific evidentiary hearing

on the authentication, best evidence rule, and chain of custody for each particular government exhibit or photo, there will be a morass of voir dire examinations and sidebars to resolve these issues before the District Court and a jury.

The defendant objects to the finding of authentication, chain of custody, and best evidence rule of the general evidence presented, noting that the government never offered any evidence of chain of custody or best evidence nor did the magistrate court rule on either specifically. As to the issue of authentication, the government's own expert said he could not testify that a "true copy" exists today. This is because of the failure of the Pembroke Pines Police Department officers after seizure of the defendant's cell phone and SD card to:

1) not manipulate the defendant's phone and SD card manually for 18 minutes on video,

2) secure the defendant's phone and SD card from the cell phone towers,

3) secure the defendant's phone and SD card from the internet,

4) conduct an analysis of the SD card from the defendant's phone on a computer that was properly write-protected and apparently used on 150 prior child pornography cases, and

5) not to use a thumb drive that had not been formatted or erased properly after use on CR's phone and SD card and then also on the defendant's phone and SD card plus apparently 150 previous child pornography cases.

These were all reasons why the government's own expert from ICAC could not tell the Court today that the images recovered from the defendant's SD card were "a true copy" of the images present when seized from the defendant. In other words, the government

expert cannot say under FRE 901(b)(9) that a process or system was used to produce an accurate result. With the above arbitrary and non-best practice process (without a SOP at the PPPD and probably in complete contradiction to the SOP of ICAC) and system that was used to recover images from the SD card of the defendant, the government's expert cannot say it produced an accurate result in violation of FRE 901(b)(9).

Without securing the phone and SD card from the Internet and cell phone towers, the SD card and phone were adulterated by continued data transmissions. Who knows what the manual manipulation of the officer did to the cell phone and SD card of the defendant over an 18-minute period while still connected to the Internet and cell phone towers. Analyzing the SD card on a non-write protected computer (that previously had analyzed 150 child pornography cases) allows the previous data and the current data on the SD card to comingle and cross with the hard drive on the non-write protected computer. Without a complete re-formatting of the thumb drive, the previous 150 child pornography cases remain on the thumb drive --- not visible to Windows operator --- but nonetheless there. Using a thumb drive without proper formatting to erase it and then using the thumb drive to upload data from the defendant's phone and SD card will also allow the new and old data to comingle and both (if not all 150 cases) remain on the thumb drive. Keep in mind also that the victim CR's phone and SD card were first uploaded to the thumb drive and then the defendant's phone and SD card were uploaded to the thumb drive without an intermittent complete re-formatting. Interestingly the images at issue were found by ICAC on the defendant's SD card but not on CR's phone—yet CR's phone supposedly sent the images?

For purposes of the uploads from the defendant's cell phone and SD card to the thumb drive, one Cellibrite report was done on March 20, 2011, and then another report on March 29, 2011.  There is a text message on the second report dated March 28, 2011.  This causes older messages to be deleted and new ones to be added.  Clearly the cell phone and SD card were yet again not secured from the Internet or cell phone towers or both.  What additional manual manipulation occurred?  It is further proof that the ICAC report done subsequently PPPD's adulterations is not a true copy of the defendant's cell phone and SD card at the time the crime was allegedly committed prior to his arrest on March 20, 2011.  *See United States v. Prieto*, 549 F.3d 513, 524-25 (7th Cir. 2008)(holding that the proponent must show that the physical exhibit being offered is in substantially the same condition as when the crime was committed).

The magistrate court shifted the burden to the defendant to show particular data had been adulterated.  *United States v. Emerson*, 501 F.3d 804, 813-14 (7th Cir. 2007)(holding that the government satisfies this requirement by offering **clear and convincing evidence**).  The burden rests with the government.  *United States v. Prieto*, 549 F.3d 513, 524-25 (7th Cir. 2008)(holding that the proponent must show that the physical exhibit being offered is in substantially the same condition as when the crime was committed).  It is a Catch-22 for the defendant because the adulterations by the government have erased and changed the data from a state that the defendant no longer has access to because the government adulterated it.  The simple fact of the matter is that Pembroke Pines Police Department should have secured all the electronic media at issue by removing the batteries and immediately handing the electronic media over to the experts at ICAC.  The ICAC procedures apparently are a process and system that

produces an accurate result for authentication under FRE 901(b)(9). As the ICAC expert told the court, he cannot tell the court today that the current results of the SD card examination are a "true copy" because the process and system used at PPPD was flawed.

The defendant objects to the generalized authentication rulings of the magistrate court as previously mentioned and moves the District Court to order the magistrate court to conduct an evidentiary hearing or to conduct its own hearing and thereby become familiar with the evidence on a photo-by-photo basis to specifically and individually rule on the authentication, best evidence, and chain of custody issues for each piece of electronic media.

D.   In docket entry 54 the defendant moved the Court to order the government to answer a bill of particulars. The defendant objects to the magistrate court not ordering the government to answer the bill of particulars as specifically questioned. The magistrate court did not ask the government to individually respond as to why it should not answer to the specifically listed questions in docket entry 54. An individualized assessment at an evidentiary hearing must be done.

E.   In docket entry 59 and docket entry 49, the defendant moves for Brady, Kyles, Agurs, and Giglio materials as well as moves to compel the production of all images that do not depict minors. The magistrate court did order the government to produce "any images of clothed adults recovered from the defendant's cellular phone or Sprint account." (DE 79, ¶ 7). The defendant objects to the limited production ordered. In particular the magistrate court should have ordered the government to produce all images of non-child pornography. Also in the defendant's motion to compel discovery (DE 49), the defendant moves for copies of the electronic media of CR, the victim in

Counts 1-3, because there are no images of child pornography on CR's electronic media. It is wholly inconsistent to order non-child pornography to be produced from the defendant's electronic media (DE 79, ¶ 7) and yet none of the non-child pornography from CR's phone. Any argument that the production order is strictly limited to the photos found on the defendant's phone and SD card fail because it is clear that the production rule includes evidence that the government intends to rely on during trial.

      F.      In docket entry 55 the defendant moves to suppress the second statement given by the defendant on April 7, 2011. The defendant had retained counsel after his March 20, 2011, arrest by the Pembroke Pines Police Department. The defendant specifically invoked his right to counsel to Detective Scopa on March 20, 2011. The Pembroke Pines Police Department was well aware of the appearance of counsel for the defendant and chose to ignore it.  The defendant had previously told Detective Scopa during an interrogation that he wanted a lawyer.  Detective Scopa purposely remained outside the interrogation room so the defendant, who was 19 years old, would not invoke his right to counsel again.  If there was no intent to be deceptive or trick the defendant from a knowingly and voluntary waiver, then why did Detective Scopa remain outside the room and not let his presence be known to the defendant.  The ultimate manipulation that Detective Scopa also admitted was sending in Detective Andres to interrogate the defendant because Detective Scopa know that Detective Andres had a prior relationship with the defendant from Flanagan High School where the defendant previously attended and Detective Andres was previously a School Resources Officer. The PPPD overcame the will of a 19 year old.

The defendant specifically objects to page 23 of DE 78 that the testimony of Detective Andres was not impeached or rebutted. Detective Scopa admitted that he knew that Detective Andres had a prior relationship with the defendant. Detective Andres made it clear that he was familiar with the defendant and had spoken with him on numerous occasions at Flanagan High School.

The defendant also objects to page 23 of docket entry 78 to the extent that the magistrate court speculates that the defendant may well have argued that he was being harassed if Detective Scopa had interviewed him on April 7, 2011. It is clear from the testimony of Detective Scopa that Detective Scopa knew well that the defendant would invoke his right to counsel again if Detective Scopa were to attempt to interrogate him. There is no need to speculate about harassment. The issue is deception and overcoming the will of a 19 year old to invoke his right to counsel a second time.

G.   In docket entry 57 the defendant moved to sever the counts into three separate trials. The compelling prejudice is that the CR counts one through three involve a cell phone of the victim, CR, yet the AG counts, counts four through six, do not involve a cell phone or electronic media of AG. There is a lack of physical evidence in support of her testimony. The magistrate court says there are text messages but the government is misleading the court; there are records of contact via text message between the two cell phones but there is no content in the messages. The government is relying upon images of AG that were found on the defendant's SD Card of his cell phone. It is noteworthy that of the forensic images found on his phone, there is a lack of any sort of meta data or forensic data suggesting who sent them, to whom, when they were sent, by whom they were sent, when they were received, or when they were deleted. In the counts for AG,

9

there is no electronic media or anything to analyze. This leads to inconsistent defenses about having a cell phone and not having a cell phone, and the weight of the evidence against the defendant. On the one hand the defendant will argue that there is no cell phone to corroborate the story of the victim AG, for counts four through six, yet there is a cell phone to corroborate the story of CR, in counts one through three. The bottom line is that there is no electronic media or cellular telephone for the AG counts. Then count seven involves a remote server or "cloud" and the re-possession of child pornography from a previously concluded juvenile case. This is yet a third defense about the government being unable to show how the images arrived to the defendant's phone. A severance is also warranted because the charges in counts one through three are years apart from those in count seven, during which time the defendant was younger the charges are not connected in any way other than the prosecutor's approach to the case.

  G. The magistrate court granted the government's request to bar the use of the identities of the complainants in this case in docket entry 45.  The defendant objects. For purposes of voir dire examination it will be impossible to know whether or not a member of the venire has a relationship with a witness identified by initials instead of the full name of the complainant.

  H. The defendant objects to the magistrate order regarding the issue of consent. The defendant believes that consent is a possible defense to one or more of the crimes charged, and thus the defendant should be allowed to address the issue during cross examination, and present evidence to the issue.

  I. The defendant's motions regarding discovery to exclude data, and to exclude evidence has been discussed heretofore. As stated the discovery supplied is

unreliable. Further discovery, as requested, may help determine if there is a way for the cell phone information to be come more or less reliable. Absent additional discovery. The defendant will maintain a continuing objection to the admission ability and reliability of the forensic cell phone information.

      J.     The order denying the request for a Bill of Particulars should not be affirmed. The discovery provided (including the photograph numeration) fails to state when the crime started; the date of any telephone calls or text messages, the date photos were requested or provided. It is difficult to defend a case when it is unclear when the alleged crime was committed, or how the charges are related to one another.

      K.     The review of the objectionable and non-objectionable images remains laborious. Undersigned counsel has reviewed a photographic display of images. On one side of the folder are 29 pages of photos. Each page contains approximately 9 pictures. The arguably objectionable photos reflect a young female taking pictures of herself. On some photos, she is clothed, then some in bra and panties, some nude. None of the pictures depict sexual intercourse, anal intercourse, fellatio, cunnilingus, sadism, masochism or other sexual activity; ONLY nude self portraits.

      The confusion however is that some pages are of one female, other pages are of different females dressed or not. The pictures are not arranged by count in the indictment. Some pictures appear to depict strippers.

      The other longer set of exhibit images is more pages with multiple images, some fully clothed, others not.

      The prosecution has stated that they wish to introduce some of these photos, which they state do not represent child pornography. They have refused to identify which

photos they will seek to introduce beyond those identified in the response to the Bill of Particulars. That leaves the defense to being unable to prepare because the non-illegal images have not been provided. The defendant continues to object to this unfair process.

CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2011, I electronically file the foregoing document with the Clerk of the Court using CM/ECF with service to all parties.

          Christopher Grillo, P.A.
          Counsel for the Defendant
          One East Broward Boulevard
          Suite 700, Wachovia Tower
          Fort Lauderdale, Florida 33301
          Telephone: 954-524-1125
          chrisgrilloatty@aol.com

          /s/ Christopher Grillo
By: Christopher Grillo, Esquire
          Florida Bar Number 302661