1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2
                       11-60088-CR-COHN/SELTZER
3

4  THE UNITED STATES OF AMERICA, )
                                 )
5              PLAINTIFF,        )
                                 )
6          VS.                   )
                                 )
7  BENJAMIN RAND,                )
                                 )
8              DEFENDANT.        )
   _____)
9
                     (TRANSCRIPT BY DIGITAL RECORDING)
10

11          TRANSCRIPT OF REPORT RE: COUNSEL, ARRAIGNMENT, AND

12  PRETRIAL DETENTION HEARING HAD BEFORE THE HONORABLE BARRY S.

13  SELTZER, IN FORT LAUDERDALE, BROWARD COUNTY, FLORIDA, ON APRIL

14  27, 2011, IN THE ABOVE-STYLED MATTER.

15

16
    APPEARANCES:
17
    FOR THE GOVERNMENT:   COREY STEINBERG, A.U.S.A.
18                        500 E. BROWARD BLVD., 7TH FLOOR
                          FT. LAUDERDALE, FL 33301 - 954 356-7255
19
    FOR THE DEFENDANT:    OMAR F. GUERRA JOHANSSON, ESQ.
20                        ONE E. BROWARD BLVD., SUITE 700
                          FT. LAUDERDALE, FL 33301 - 954 745-7517
21

22
                         CARL SCHANZLEH
23                     OFFICIAL COURT REPORTER
                        U. S. COURTHOUSE
24                   299 E. BROWARD BLVD., 202B
                     FORT LAUDERDALE, FLORIDA 33301
25                       954 769-5488

2

1

2                          TABLE OF CONTENTS

3    WITNESSES:                        DIRECT  CROSS REDIRECT RECROSS

4    ALEXIS CARPINTERI  ......................... 6      22       25

5                          INDEX TO EXHIBITS

6    EXHIBITS                      MARKED FOR      RECEIVED
                                   IDENTIFICATION   IN EVIDENCE
7
     DESCRIPTION                PAGE    LINE    PAGE    LINE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1  (FORT LAUDERDALE, BROWARD COUNTY, FLORIDA;  APRIL 27, 2011, IN

 2  OPEN COURT.)

 3          THE COURT:  GOOD MORNING.  PLEASE BE SEATED.

 4          LET ME TAKE A MOMENT TO WELCOME YOU HERE TO THE

 5  COURTHOUSE TODAY BEING APRIL 27, 2011, FOR MAGISTRATE COURT

 6  HEARINGS.

 7          LET ME CALL THE UNITED STATES VERSUS BENJAMIN RAND.

 8          LET ME ASK COUNSEL TO STATE THEIR APPEARANCES.

 9          MS. STEINBERG:  GOOD MORNING, YOUR HONOR.  COREY

10  STEINBERG APPEARING ON BEHALF OF THE UNITED STATES, AND

11  STANDING NEXT TO ME IS SPECIAL AGENT ALEXIS CARPINTERI WITH THE

12  FBI.

13          THE COURT:  WELCOME.

14          AGENT CARPINTERI:  GOOD MORNING.

15          THE COURT:  GOOD MORNING.

16          MR. JOHANSSON:  GOOD MORNING, YOUR HONOR, OMAR

17  JOHANSSON ON BEHALF OF MR. BENJAMIN RAND.  I DID ENTER A NOTICE

18  OF NOTICE OF PERMANENT APPEARANCE (INAUDIBLE)

19          THE COURT:  VERY WELL.  THEN LET'S GO AHEAD AND START

20  FIRST WITH THE ARRAIGNMENT.

21          MR. RAND, LET ME ASK YOU TO APPROACH THE LECTERN.

22          MR. RAND, LET ME ASK, HAVE YOU HAD AN OPPORTUNITY THE

23  READ AND REVIEW A COPY OF THE INDICTMENT ALONG WITH YOUR

24  ATTORNEY, MR. JOHANSSON, AND DO YOU UNDERSTAND THE ALLEGATIONS

25  AGAINST YOU?
```

 1            THE DEFENDANT:  YES, SIR.

 2            THE COURT:  OKAY.  MR. JOHANSSON, DO YOU WAIVE READING

 3  AND ARE YOU PREPARED TO ENTER A PLEA AT THIS TIME?

 4            MR. JOHANSSON:  YES, YOUR HONOR.  WE WAIVE FORMAL

 5  READING OF THE INDICTMENT, ENTER PLEAS OF NOT GUILTY TO COUNTS

 6  ONE, TWO, AND THREE, DEMAND A JURY TRIAL, YOUR HONOR, AND ASK

 7  THAT THE COURT ENTER THE STANDING DISCOVERY ORDER.

 8            THE COURT:  VERY WELL.  THE PLEA OF NOT GUILTY AND

 9  DEMAND FOR A JURY TRIAL WILL BE ENTERED INTO THE RECORD AND THE

10  STANDING DISCOVERY ORDER WILL BE ISSUED AS OF THIS DATE.

11            A STATUS CONFERENCE WILL BE HELD ON MAY 12TH, 2011,

12  THAT'S MAY 12TH AT ELEVEN A.M. BEFORE JUDGE SNOW.

13            ALL RIGHT.  WE ARE ALSO HERE FOR A PRETRIAL DETENTION

14  HEARING.  ARE BOTH SIDES READY TO BEGIN?

15            MR. JOHANSSON:  YES, YOUR HONOR.

16            MS. STEINBERG:  YES, SIR.

17            THE COURT:  OKAY.  LET ME TURN TO THE GOVERNMENT TO

18  BEGIN.

19            MS. STEINBERG:  YOUR HONOR, I SUBMITTED A FACTUAL

20  BASIS --

21            THE COURT:  IF CAN YOU APPROACH THE LECTERN, PLEASE.

22            MS. STEINBERG:  I'M SORRY.

23            THE GOVERNMENT SUBMITTED A FACTUAL BASIS IN SUPPORT OF

24  PRETRIAL DETENTION YESTERDAY.

25            THE COURT:  ALL RIGHT.

```
 1            MS. STEINBERG:  WE WOULD RELY ON ALL OF THE FACTS THAT

 2   ARE SET FORTH IN THAT FACTUAL BASIS --

 3            THE COURT:  OKAY.

 4            MS. STEINBERG:  -- AND RESERVE THE RIGHT TO MAKE

 5   ARGUMENT AFTER THE AGENT IS CROSS-EXAMINED IF THAT'S OKAY WITH

 6   YOUR HONOR.

 7            THE COURT:  ALL RIGHT.

 8            MS. STEINBERG:  AND WE WOULD OFFER UP SPECIAL AGENT

 9   CARPINTERI FOR CROSS-EXAMINATION PURPOSES.

10            THE COURT:  OKAY.  MR. JOHANSSON, DO YOU WISH TO

11   CROSS-EXAMINE THE AGENT?

12            MR. JOHANSSON:  IF I MAY, YOUR HONOR.

13            WE MIGHT BE ABLE TO START OFF WITH A LITTLE BIT OF AN

14   AGREEMENT I THINK HERE ON THE PRETRIAL SERVICES REPORT.

15            THE COURT:  WELL, I WILL GET TO THAT WHEN I GET TO THE

16   DEFENSE SIDE OF THE PRESENTATION.

17            MR. JOHANSSON:  OKAY.

18            THE COURT:  LET ME ASK THE AGENT TO APPROACH AND BE

19   SWORN.

20            (WITNESS SWORN)

21            THE WITNESS:  I DO.

22            THE COURT:  OKAY.  IF YOU CAN PLEASE BE SEATED.  ONCE

23   YOU GET COMFORTABLE IF YOU WOULD STATE YOUR NAME AND SPELL YOUR

24   LAST NAME.

25            THE WITNESS:  OKAY.  GOOD MORNING.  ALEXIS CARPINTERI,
```

1  C-A-R-P-I-N-T-E-R-I.

2          THE COURT:  ALL RIGHT.  MR. JOHANSSON, YOU MAY

3  CROSS-EXAMINE.

4          MR. JOHANSSON:  THANK YOU, YOUR HONOR.

5                       ALEXIS CARPINTERI,

6  BEING DULY SWORN, WAS EXAMINED AND TESTIFIED AS FOLLOWS:

7                       CROSS EXAMINATION

8  BY MR. JOHANSSON:

9  Q.  CAN YOU PLEASE TELL US WHERE YOU ARE EMPLOYED AND WHAT YOUR

10  POSITION IS?

11  A.  I'M CURRENTLY EMPLOYED WITH THE FEDERAL BUREAU OF

12  INVESTIGATION IN THE MIAMI DIVISION.  I WORK ON A SPECIALIZED

13  SQUAD THAT HANDLES ALL CRIMES AGAINST CHILDREN.

14  Q.  THIS CASE ORIGINATED WITH PEMBROKE PINES, CORRECT?

15  A.  THAT'S CORRECT.

16  Q.  AND YOU CERTAINLY HAVE SPOKEN TO ALL OF THE DETECTIVES AND

17  THE OFFICERS THAT WERE INVOLVED WITH THIS INVESTIGATION,

18  CORRECT?

19  A.  MOST OF THEM, YES.

20  Q.  WHO HAVE YOU NOT SPOKEN TO?

21  A.  I BELIEVE THERE WERE FIRST RESPONDERS THAT I HAVE NOT

22  INTERVIEWED.

23  Q.  DID YOU READ THEIR REPORTS?

24  A.  I READ THE REPORTS THAT DETECTIVE SCOPA AND DETECTIVE ANDRA

25  AUTHORED, YES.

1  Q.  AND THE FIRST RESPONDERS WROTE REPORTS AS WELL, DIDN'T

2  THEY --

3  A.  I.

4  Q.  THE FIRST RESPONDERS THAT YOU ARE REFERRING TO THEY WROTE

5  REPORTS AS WELL, CORRECT?

6  A.  I DON'T BELIEVE SO.  I BELIEVE THEY CONDUCTED A RECORDED

7  INTERVIEW THAT WAS PROVIDED.

8  Q.  OKAY.  DID THEY PROVIDE ANY REPORTS ABOUT THEIR RECORDED

9  INTERVIEW?

10  A.  NOT THAT I'M AWARE OF.

11  Q.  BUT YOU ARE CERTAINLY FAMILIAR WITH THE EXTENT OF THE

12  INVESTIGATION AND THE FOLKS WHO ARE INVOLVED WITH IT, CORRECT?

13  A.  YES, I AM.

14  Q.  OKAY.  YOU DID A BACKGROUND CHECK ON MR. RAND, CORRECT?

15  A.  I DID RUN SOME CHECKS.

16  Q.  IN PARTICULAR -- AND ARE YOU FAMILIAR WITH THIS ONE, TWO,

17  THREE, FOUR, FIVE, SIX PAGE FACTUAL BASIS THAT THE PROSECUTOR

18  SUBMITTED, CORRECT?

19  A.  THAT'S CORRECT.

20  Q.  AND, IN FACT, THIS IS SOME OF YOUR INVESTIGATION THAT YOU

21  PASSED ON TO MISS STEINBERG, CORRECT?

22  A.  THERE ARE PARTS OF MY SUMMARY IN THERE, YES.

23  Q.  OKAY.  SO YOU ARE DEFINITELY FAMILIAR WITH WHAT'S IN HERE.

24  A.  YES.

25  Q.  AND, IN FACT, THERE IS MORE.

1    A.   EXCUSE ME?

2    Q.   YOU SAID THIS IS PART.  SO THERE IS MORE BEYOND JUST THIS,

3    CORRECT?

4    A.   NO.   I WAS REFERRING TO SOME OF THE INFORMATION HERE THAT

5    SHE AUTHORED HERSELF THAT WERE CUT AND PASTED DIRECTLY FROM MY

6    REPORT.

7    Q.   BUT THIS IS NOT A COMPLETE SUMMARY OF YOUR INVESTIGATION OR

8    YOUR REPORTS, CORRECT?

9    A.   THAT'S CORRECT.

10   Q.   OKAY.   IN TERMS OF BACKGROUND FOR MR. RAND YOU FIGURED OUT

11   THAT HE HAD A JUVENILE CASE PREVIOUSLY, CORRECT?

12   A.   YES.

13   Q.   OKAY.  HE WAS ADJUDICATED DELINQUENT IN THAT CASE, CORRECT,

14   NOT CONVICTED.

15   A.   I WOULD HAVE TO LOOK AT THE ACTUAL CONVICTION OR WHAT

16   YOU'RE LOOKING AT.

17   Q.   YOU DID THAT AS PART OF YOUR INVESTIGATION, CORRECT?

18   A.   I OBTAINED A CERTIFIED COPY OF THE CONVICTION, THAT'S

19   CORRECT.

20   Q.   AND HAVE YOU READ IT?  DID IT SAY CONVICTION OR DID IT SAY

21   ADJUDICATED DELINQUENT?

22   A.   I WOULD LIKE TO REVIEW IT IF POSSIBLE.

23        MR. JOHANSSON:  MAY I APPROACH, YOUR HONOR?

24        THE COURT:   YES.  YOU KNOW, I DON'T KNOW IF YOU WANT

25   TO WASTE TIME ON THIS BECAUSE THE PROFFER SAYS IT WAS IN

```
 1   JUVENILE COURT AND THAT'S WHAT THEY DO.  I WAS A JUVENILE COURT

 2   JUDGE AND I KNOW HOW IT WORKS.

 3           MR. JOHANSSON:  SO IT'S --

 4           THE COURT:  IT'S IN THE PROFFER AND IT ALREADY SAYS IT

 5   WAS IN COURT JUVENILE COURT AND IT WAS HELD IN A JUVENILE

 6   FACILITY.  SO IT IS ALREADY IN THERE.  SO THE TERMINOLOGY

 7   WHETHER ADJUDICATED GUILTY OR DELINQUENT IS NOT SOMETHING I

 8   WANT TO ARGUE OVER.

 9           MR. JOHANSSON:  OKAY.

10   BY MR. JOHANSSON:

11   Q.  AND YOU WOULD AGREE AS WELL THAT HE WAS SENT TO THE

12   DEPARTMENT OF JUVENILE JUSTICE AND NOT TO A DEPARTMENT OF

13   CORRECTIONS PRISON OR JAIL AS IT SAYS IN THE STIPULATION AS

14   WELL, CORRECT?

15           THE COURT:  I THINK MR. JOHANSSON IS REFERRING TO

16   PARAGRAPH -- IT'S PAGE FIVE, THE LAST PARAGRAPH.

17           MS. STEINBERG:  SPECIAL AGENT CARPINTERI DO YOU HAVE A

18   COPY OF THE PROFFER UP THERE?

19           THE WITNESS:  YES, I DO.

20           MR. JOHANSSON:  I WILL MOVE ON, YOUR HONOR.  I KNOW

21   YOU'RE FAMILIAR WITH THOSE ISSUES.  I WANT IT TO BE CLEAR THAT

22   IT IS NOT AN ADULT CONVICTION WITH PRISON.

23   BY MR. JOHANSSON:

24   Q.  YOU DID MENTION THAT -- IN THIS PROFFER THAT THE

25   RELATIONSHIP BETWEEN MR. RAND AND C.R. SUPPOSEDLY STARTED VIA
```

```
 1  TEXT MESSAGING, CORRECT?

 2  A.  THAT'S CORRECT.

 3  Q.  BUT IN FACT THIS C.R. IS ACTUALLY THE YOUNGER SISTER OF

 4  SOMEONE THAT MR. BENJAMIN RAND KNOWS, CORRECT?

 5  A.  THAT'S CORRECT.

 6  Q.  AND THEY ACTUALLY MET FACE TO FACE.

 7  A.  THAT'S CORRECT.  I WAS REFERRING TO THIS PARTICULAR TIME

 8  AFTER HE WAS RELEASED FROM CUSTODY WHERE IT STARTED AGAIN.

 9  Q.  AND CERTAINLY AS PART OF YOUR UNIT THERE ARE NUMEROUS

10  PREDATORS ON THE INTERNET SURFING AND TROLLING FOR CHILDREN,

11  CORRECT?

12  A.  THAT'S CORRECT.

13  Q.  MR. RAND DOESN'T FIT THAT BILL, DOES HE?

14          MS. STEINBERG:  YOUR HONOR, I WILL OBJECT.  I DON'T

15  UNDERSTAND THE LINE OF QUESTIONING AT THIS POINT.  I MEAN, WE

16  ARE HERE FOR A DETENTION HEARING AND HE'S ASKING AN OPEN-ENDED

17  QUESTION IF MR. RAND WHO FRANKLY IS HERE TO FACE SOME

18  SERIOUS --

19          THE COURT:  SUSTAINED.

20          YOU CAN ASK THE AGENT ABOUT THE FACTS OF THIS CASE.  I

21  WILL LET YOU ARGUE LATER WHATEVER INFERENCES YOU WISH TO ARGUE

22  BUT LET'S STICK TO THE FACTS.

23  BY MR. JOHANSSON:

24  Q.  THE FACT OF THE CASE IS, THEY MET FACE TO FACE FIRST,

25  CORRECT?
```

 1  A.  AT SOME POINT IN PRIOR YEARS, YES.

 2  Q.  FACTUALLY YOU SAY THAT NUDE PICTURES OF C.R.  SHE TOOK NUDE

 3  PICTURES OF HERSELF IN FRONT OF A BATHROOM MIRROR.  CLEARLY YOU

 4  KNOW BECAUSE YOU ENFORCE THE SEXUAL EXPLOITATION LAWS WHAT

 5  SEXUALLY EXPLICIT CONDUCT MEANS, CORRECT?

 6  A.  YES.

 7  Q.  THESE PICTURES ARE TAKEN FROM A BATHROOM MIRROR.  ARE THEY

 8  SEXUALLY EXPLICIT CONDUCT?

 9  A.  SOME OF THEM ARE, YES.

10  Q.  AND WHY IS THAT?

11  A.  BECAUSE THEY ARE LEWD AND LASCIVIOUS DISPLAY OF THE

12  GENITALIA YEAH.

13  Q.  AND THESE ARE THE ONES TAKEN IN FRONT OF THE BATHROOM

14  MIRROR?

15  A.  SOME OF THEM, YES.

16  Q.  SOME OF THEM.  AND WHEN YOU SAY LEWD AND LASCIVIOUS WHAT

17  ARE YOU SAYING FACTUALLY?

18       MS. STEINBERG:  YOUR HONOR, I AM GOING TO OBJECT.  I

19  THINK SHE DESCRIBED IT AS SEXUALLY EXPLICIT PICTURES OF THE

20  GENITALIA.

21       THE COURT:  I THINK MR. JOHANSSON IS ASKING FOR A

22  DESCRIPTION OF WHAT IT DEPICTS.

23       YOU KNOW, THERE IS SOMETHING ALREADY IN REFERENCE

24  TO IT ALREADY IN THE PROFFER.  DO YOU WANT TO JUST ASK THE

25  WITNESS IF THAT'S WHAT SHE IS REFERRING TO?

 1 | BY MR. JOHANSSON:

 2 | Q.  SO --

 3 |        THE COURT:  RATHER TRYING TO AVOID GETTING TOO

 4 | GRAPHIC.  IT'S ALREADY IN THE -- IF IT IS IN THE FACTUAL

 5 | PROFFER AND IF YOU WANT TO REFERENCE THAT, THAT'S FINE.

 6 | BY MR. JOHANSSON:

 7 | Q.  SURE.  I REALIZE LATER ON THERE IS A DESCRIPTION OF WHAT IS

 8 | DEPICTED AND IT CLEARLY USES SEXUAL LANGUAGE TO DESCRIBE IT.

 9 | HOWEVER, THESE NUDE PICTURES IN FRONT OF THE BATHROOM MIRROR, I

10 | WANT THE COURT TO REALIZE THAT THERE IS NOTHING SEXUALLY

11 | EXPLICIT ABOUT THOSE.  YES OR NO?

12 |        MS. STEINBERG:  YOUR HONOR, I THINK IT HAS BEEN ASKED

13 | AND ANSWERED.

14 |        THE COURT:  OKAY.  (INAUDIBLE)

15 |        THE WITNESS:  SOME OF THE IMAGES ARE SEXUALLY EXPLICIT

16 | IN NATURE WHERE THE FOCUS OF THE PICTURE IS THE GENITALIA OF

17 | THE FEMALE.

18 | BY MS. JOHANSSON:

19 | Q.  OKAY.  AND, IN FACT, C.R. DELETED THESE IMAGES FROM HER

20 | PHONE, CORRECT?

21 | A.  THAT'S CORRECT, OR SHE DID NOT SAVE THEM TO BEGIN WITH.

22 | Q.  AND C.R. EVEN SAYS THAT TO THE BEST OF HER KNOWLEDGE

23 | APPARENTLY THAT MR. RAND DELETED THEM AS WELL.

24 | A.  SHE BELIEVED HE DELETED THEM UP TO A POINT AND THEN SHE

25 | REALIZED HE STILL HAD THE IMAGES.

1   Q.  SO SHE CHANGED HER STORY.

2   A.  NO, HER STORY HAS REMAINED THE SAME THAT AT SOME POINT HE

3   THREATENED TO POST HER PICTURES ON LINE AND CREATE A WEB SITE.

4   AT THAT POINT SHE OBVIOUSLY REALIZED THAT HE STILL HAD THE

5   IMAGES.

6   Q.  SO AT ONE POINT SHE SAYS THAT HE'S DELETED THEM, IN THE

7   NEXT ONE SHE SAYS HE HAS NOT DELETED THEM?

8   A.  SHE STATED THAT SHE DIDN'T KNOW.  SHE BELIEVED HE MAY HAVE

9   DELETED THEM UNTIL HE THREATENED HER AND THEN SHE REALIZED

10  HOW --

11  Q.  HOW DID SHE KNOW THAT?

12  A.  BECAUSE HE THREATENED HER WITH THEM.

13  Q.  BUT THE THREATS AREN'T NECESSARILY (UNINTELLIGIBLE) THREATS

14  DON'T NECESSARILY EQUATE TO YES OR NO ON DELETE, CORRECT?

15  A.  I'M JUST REFERRING TO, YOU ASKED WHAT SHE BELIEVED AND WHAT

16  SHE STATED.  SO I DON'T KNOW WHAT IT MEANS.  IN ACTUALITY HE

17  STATED THAT HE HAD THEM AND HE WOULD POST THEM.  SHE BELIEVED

18  THEM AT THAT POINT.

19  Q.  VARIOUS OF THESE PICTURES THAT SHE'S REFERRING TO ARE

20  BEFORE ANY ALLEGED THREATS EVEN OCCURRED.

21  A.  I'M SORRY, I'M CONFUSED.  COULD YOU ELABORATE?  I'M NOT

22  SURE WHAT YOUR QUESTION IS.

23  Q.  THE QUESTION IS, C.R. SAID THAT THE DEFENDANT DELETED THEM

24  FROM HIS PHONE AND THAT'S BEFORE OF ANY THREATS OF ANY SORT.

25  A.  WHEN SHE REPORTED THIS TO THE POLICE SHE STATED THAT SHE

 1  SENT THE PICTURES AND SHE THOUGHT HE DELETED THEM AFTER LOOKING

 2  AT THEM, BUT THAT AT A LATER DATE SHE REALIZED HE STILL HAD

 3  THEM BECAUSE HE THREATENED HER WITH THEM.  ALL OF THIS WAS MADE

 4  IN THE INITIAL POLICE REPORT.  HER STORY DID NOT CHANGE.

 5  Q.  ANY EVIDENCE OF THIS WEB SITE BEING CREATED?

 6  A.  I HAVE TEXT MESSAGES WHERE HE IS THREATENING HER WITH A WEB

 7  SITE, YES.

 8  Q.  ANY EVIDENCE THAT IT WAS ACTUALLY CREATED?

 9  A.  NO.  NO.

10  Q.  ANY EVIDENCE THAT THERE WAS ANY PICTURES WERE ACTUALLY

11  POSTED?

12  A.  NO.

13  Q.  SO THE THREATS WERE VIA TEXT MESSAGE?

14  A.  YES.

15  Q.  ON HER PHONE OR HIS PHONE?

16  A.  THE TEXT MESSAGES WERE RECOVERED OFF OF HIS PHONE.

17  Q.  AND SPECIFICALLY WHAT DID THE THREATS SAY?

18  A.  OKAY.  ACTUALLY -- I BELIEVE THEY WERE OFF HIS PHONE.

19  Q.  AND SPECIFICALLY FACTUALLY WHAT DID THE THREATS SAY?

20  A.  WOULD YOU LIKE ME TO READ A FEW OF THEM?

21  Q.  SURE.

22  A.  OKAY.  IN THE FIRST TEXT -- ACTUALLY I BELIEVE THESE WERE

23  OFF OF HER PHONE.  I WOULD HAVE TO LOOK AT THE INITIAL SHEET TO

24  MAKE SURE, BUT I BELIEVE -- HE STATED, "YOU HAVE UNTIL 1:15 TO

25  CALL OR TEXT BACK.  IDC, IF YOU'RE SLEEPING, IF YOU DON'T GET

1  BACK TO ME I'M DOING IT."

2  ANOTHER TEXT SAID, "OKAY.  WELL, YOU WEREN'T EVEN
3  TEXTING AND NOW I HAVEN'T POSTED ANYTHING YET.  I'M STILL
4  WORKING ON THE CODING AND IT'S NOT POSSIBLE FOR YOU TO BE
5  PREGNANT BECAUSE IT'S IMPOSSIBLE FOR ME TO HAVE KIDS.  THAT'S
6  HOW I WAS BORN.  IT RUNS IN MY FAMILY.  BUT STILL ARE YOU
7  COMING TONIGHT BECAUSE IF YOU DON'T IT WILL BE POSTED."

8  IN ANOTHER TEXT MESSAGE HE STATED, "I'M DONE WITH IT
9  AND I'M READY TO POST IT BECAUSE YOU'RE NOT RESPONDING.  SO
10  1:45 IT'S GOING UP.  THAT'S IN FIVE MINUTES."

11  ANOTHER TEXT.  "OKAY.  THIS IS YOUR LAST CHANCE BEFORE
12  IT GOES UP.  CALL ME QUICKLY BECAUSE IF YOU CALL I WILL STOP."

13  THE NEXT TEXT.  "THAT'S IT.  I GAVE YOU AS MANY
14  CHANCES AS POSSIBLE.  IT'S GOING UP RIGHT NOW.  SORRY, BUT IT'S
15  YOUR FAULT.  ALL YOU HAD TO DO WAS REPLY TO ME."

16  THE NEXT TEXT.  "WE WEREN'T EVEN GOING TO DO ANYTHING.
17  I JUST WANTED TO SEE IF YOU WOULD SHOW UP.  THAT'S ALL.  BUT BY
18  IGNORING ME LOOK AT WHAT IT COST YOU."

19  THE NEXT TEXT MESSAGE.  "BUT NOW IT'S TRUE.  SO I KNOW
20  YOU'RE NOT IN THE SHOWER ANYMORE SO YOUR CHANCES IS UP BECAUSE
21  I'M GOING TO SLEEP.  GOODBYE FOREVER AND BGW.  WHEN I SUBMIT IT
22  YOU'RE DAD IS GOING TO GET A LOOK ON HIS PAGE TO GO STRAIGHT TO
23  THE PAGE."

24  Q.  OKAY.  BUT IN THERE HE SAYS, "I WAS NOT GOING TO DO IT,"
25  CORRECT?  ONE OF THE LINES YOU JUST READ, "I WAS NOT GOING TO

 1  DO IT."

 2  A.   THAT'S CORRECT, ON THAT ONE LINE.

 3  Q.   AND, IN FACT, NOTHING WAS EVER POSTED.

 4  A.   NOT THAT I'M AWARE OF.

 5  Q.   THE REALITY IS THAT THIS YOUNG GIRL IS ENAMORED WITH

 6  MR. RAND, CORRECT?

 7  A.   I DON'T KNOW.  I DON'T HAVE ANY INFORMATION ABOUT THAT.

 8  Q.   THAT CERTAINLY CAME UP.  IN FACT, MR. RAND TOLD YOU THAT

 9  WHEN YOU MET WITH HIM AT THE PEMBROKE PINES POLICE DEPARTMENT,

10  CORRECT?

11  A.   THAT WAS WHAT HE STATED TO ONE OF THE OFFICERS.

12  Q.   AND THAT'S CONSISTENT WITH YOUR CONVERSATION WITH HER AS

13  WELL, CORRECT?

14  A.   THAT'S NOT CORRECT.

15  Q.   AND THE WEB SITE IN FACT IN THESE THREATS THAT WERE

16  OBVIOUSLY NEVER CARRIED OUT WERE TO MAKE HER GO AWAY, CORRECT?

17  A.   THAT'S NOT CORRECT.  IT SAYS THAT SHE NEEDS TO MEET HIM OR

18  THE WEB SITE WILL GO UP.

19  Q.   MEET HIM FOR WHAT?

20  A.   ACCORDING THE VICTIM TO HAVE SEXUAL INTERCOURSE.

21  Q.   AND ACCORDING TO MR. RAND WHEN YOU MET WITH HIM TO MAKE HER

22  GO AWAY, CORRECT?

23  A.   I DID NOT MEET WITH HIM, BUT WHEN HE TALKED TO THE POLICE

24  DEPARTMENT THAT IS WHAT HE SAID.

25  Q.   OKAY.  THIS SECOND -- YOU CHARGES WERE FILED ON --

1 ORIGINALLY ON MARCH 19TH BY THE STATE, CORRECT?

2 A.  I BELIEVE IT WAS THE 21ST, BUT THE ACTIVITY OCCURRED RIGHT

3 AROUND MARCH 19TH.

4 Q.  AND, IN FACT, HE POSTED BOND ON THE INITIAL THREE CASES,

5 CORRECT -- OR INITIAL THREE CHARGES, CORRECT?

6 A.  I BELIEVE SO.

7 Q.  DID HE FLEE WHILE ON BOND FOR THE STATE CASE?

8 A.  NOT THAT I'M AWARE OF.

9 Q.  IS THERE ANY EVIDENCE IN ANY WAY, SHAPE, OR FORM THAT HE

10 HAD ANY CONTACT WITH ANYONE UNDER THE AGE OF 18 WHILE ON BOND?

11 A.  I'M NOT AWARE.

12 Q.  OKAY.  IN FACT, THE STATE ADDED CHARGES, CORRECT?

13 A.  YES.  THAT'S CORRECT.

14 Q.  AND AGAIN, THE BOND CONDITIONS WERE INCREASED, CORRECT?

15 A.  I'M NOT AWARE OF THE SPECIFIC BOND.

16 Q.  BUT YOU KNOW THEY WERE INCREASED.

17 A.  I DON'T KNOW ANY OF THE INFORMATION JUST THAT THERE WERE

18 ADDITIONAL CHARGES FILED.

19 Q.  OKAY.  AFTER ADDITIONAL CHARGES WERE FILED DID MR. RAND

20 FLEE?

21 A.  NO.

22 Q.  IS THERE ANY EVIDENCE OF ANY CONTACT WITH ANYONE UNDER THE

23 AGE OF 18 ONCE THE ADDITIONAL CHARGES WERE FILED?

24 A.  NOT THAT I'M AWARE OF.

25 Q.  AND WHEN THESE ADDITIONAL CHARGES WERE FILED THE PEMBROKE

 1 | PINES POLICE DEPARTMENT DID AN INTERVIEW WITH MR. RAND,

 2 | CORRECT?

 3 | A.  THAT'S CORRECT.

 4 | Q.  AND MR. HOWARD GREITZER WAS HIS ATTORNEY WHEN THE CHARGES

 5 | WERE FIRST FILED, CORRECT?

 6 | A.  I'M NOT AWARE OF WHO HIS ATTORNEY WAS.

 7 | Q.  BUT HE HAD AN ATTORNEY WITH THE ORIGINAL CHARGES, CORRECT?

 8 | A.  YES, THAT'S CORRECT.

 9 | Q.  AND HE HAD AN ATTORNEY WHEN THE ADDITIONAL CHARGES WERE

10 | FILED, CORRECT?

11 | A.  I'M ASSUMING IT'S THE SAME ATTORNEY.

12 | Q.  BUT HE DID HAVE AN ATTORNEY AND YOU'RE AWARE OF THAT,

13 | CORRECT?

14 | A.  I'M NOT AWARE OF THAT.  I'M JUST ASSUMING FROM THE FIRST

15 | CHARGES.

16 | Q.  YOU ARE ASSUMING WHO IT WAS BUT YOU DO KNOW THAT HE HAD AN

17 | ATTORNEY, CORRECT?

18 | A.  ON THE FIRST CHARGES, YES.

19 | Q.  CORRECT.  AND THAT CASE IS STILL PENDING.

20 | A.  THAT'S CORRECT.

21 | Q.  AND, IN FACT, THE CHARGES HAVE JUST BEEN ADDED TO THE

22 | ORIGINAL CASE, CORRECT?

23 | A.  I DO NOT KNOW HOW THEY ACTUALLY DID THE CHARGES.  I'M NOT

24 | FAMILIAR WITH THE STATE SYSTEM.

25 | Q.  YET THEY WERE BASED ON THE SAME CONDUCT AT ISSUE, CORRECT?

1  A.   I BELIEVE THEY WERE DIFFERENT TYPES OF CHARGES.

2  Q.   BUT THE SAME CONDUCT.  THERE WAS NO NEW CONDUCT, WAS THERE?

3  A.   THERE WAS NEW CHARGED CONDUCT BUT IT RELATED FROM THE SAME

4  SET OF CIRCUMSTANCES.

5  Q.   THAT'S WHAT I MEANT.  THANK YOU.

6          AND C.R., IN FACT, ADMITTED TO THE PEMBROKE PINES

7  POLICE DEPARTMENT THAT SHE SENT IMAGES UNSOLICITED AT NOBODY'S

8  REQUEST, CORRECT?

9  A.   I BELIEVE SHE STATED THAT HE REQUESTED -- SOMETIME SHE SENT

10  THEM AT THE EXACT TIME SOMETIMES THERE WAS A DELAY BUT SHE DID

11  SEND THEM HERSELF.

12  Q.   BUT MY QUESTION WAS --

13          THE COURT:  IF YOU COULD PLEASE RETURN TO THE LECTERN.

14          MR. JOHANSSON:  YOUR HONOR, IF I MAY, EVERY TIME I ASK

15  THE AGENT A QUESTION --

16          THE COURT:  EXCUSE ME, MR. JOHANSSON.  I HAVE ASKED

17  YOU TO RETURN TO THE LECTERN AND THERE IS A REASON FOR IT.  WE

18  DON'T HAVE A COURT REPORTER, WE AUDIO RECORD AND WHEN YOU ARE

19  AWAY FROM THE MICROPHONE YOU DON'T PICK UP ANY TRANSCRIPT.

20          MR. JOHANSSON:  OKAY.  AND I WOULD SIMPLY ASK, YOUR

21  HONOR, THAT THE AGENT NOT LOOK TO THE PROSECUTOR BEFORE SHE

22  ANSWERS.  I WAS STANDING THERE FOR THAT REASON.

23          THE COURT:  ALL RIGHT.  PLEASE PROCEED.

24  BY MR. JOHANSSON:

25  Q.   THIS C.R. IN FACT TOLD THE PEMBROKE PINES POLICE DEPARTMENT

1  THAT SHE SENT IMAGES UNSOLICITED, NOT AT MR. RAND'S REQUEST,

2  CORRECT?

3  A.  NOT EXACTLY.  SHE DID STATE THAT SHE SENT THEM AT DIFFERENT

4  TIMES BUT THAT HE CONTINUALLY REQUESTED THEM.

5  Q.  BUT THERE IS IMAGES THAT WERE SENT NOT AT HIS REQUEST.

6       MS. STEINBERG:  YOUR HONOR, ASKED AND ANSWERED.

7       THE COURT:  YOU CAN RESPOND.

8       THE WITNESS:  THE SOLICITATION WAS CONSTANTLY BEING

9  MADE.  SOME OF THE IMAGES CAME AT THE TIME OF THE REQUEST AND

10  SOME OF THEM CAME AT OTHER TIMES.

11  BY MR. JOHANSSON:

12  Q.  AND I UNDERSTAND THAT'S YOUR INTERPRETATION.  BUT C.R. TOLD

13  YOU -- TOLD SOMEBODY IN THE PEMBROKE PINES POLICE DEPARTMENT,

14  THAT SHE SENT THE IMAGES UNSOLICITED.

15  A.  THAT CERTAIN IMAGES WERE SENT UNSOLICITED AT THAT MOMENT,

16  THAT'S CORRECT.

17  Q.  C.R. HAS SINCE RECANTED HER STORY TO THE PEMBROKE PINES

18  POLICE DEPARTMENT?

19  A.  NOT THAT I'M AWARE OF.

20  Q.  SHE HAS SINCE TOLD THE PEMBROKE PINES POLICE DEPARTMENT

21  THAT SHE DOES NOT WANT TO TESTIFY.

22  A.  NOT THAT I'M AWARE OF.

23  Q.  IT'S IN THE NEWSPAPER ARTICLES THAT NEITHER SHE NOR HER

24  FATHER WANT HER TO TESTIFY.

25  A.  I DON'T READ THE NEWSPAPER FOR ACTUALLY FACTUAL NEWS.  I DO

1  MY OWN INVESTIGATION.  I HAVE INTERVIEWED THE VICTIM AND SHE

2  DID NOT STATE THAT TO ME.

3  Q.  WHEN?

4  A.  I ACTUALLY DON'T HAVE MY REPORT IN FRONT OF ME.  I DON'T

5  KNOW THE DATE OF THE INTERVIEW.  IT WAS APPROXIMATELY THE VERY

6  BEGINNING OF APRIL.

7  Q.  IN YOUR EXPERIENCE AND IN YOUR TRAINING RECANTING AND

8  REFUSING TO TESTIFY IS CONSISTENT WITH SOMEBODY WHO IS LYING,

9  CORRECT?

10  A.  I AM NOT AN EXPERT ON THAT AND I HAVE NO INFORMATION THAT

11  THE VICTIM IN THIS CASE HAS RECANTED OR DECIDED NOT TO TESTIFY.

12  Q.  BUT IN YOUR TRAINING AND IN YOUR EXPERIENCE A WITNESS WHO

13  RECANTS OR REFUSES TO TESTIFY --

14          MS. STEINBERG:  OBJECTION BASED ON RELEVANCY.

15  BY MR. JOHANSSON:

16  Q.  -- IS CONSISTENT WITH SOMEBODY WHO IS LYING.

17          THE COURT:  I AM GOING TO SUSTAIN THE OBJECTION.

18          THE WITNESS HAS NO KNOWLEDGE THAT THE VICTIM HAD

19  RECANTED.  SO BASED ON -- THE QUESTION IS BASED ON A FACT NOT

20  IN EVIDENCE.

21          MR. JOHANSSON:  NOTHING FURTHER, YOUR HONOR.

22          THE COURT:  ALL RIGHT.  REDIRECT.

23          MS. STEINBERG:  BRIEFLY, YOUR HONOR.

24

25

1                    REDIRECT EXAMINATION

2   BY MS. STEINBERG:

3   Q.   SPECIAL AGENT CARPINTERI, IN THE SPECIFIC TEXT MESSAGES

4   THAT YOU READ AN EXAMPLE OF THAT WASN'T ALL OF THE THREATENING

5   TEXT MESSAGES THAT THE DEFENDANT SENT TO C.R. IN THIS CASE, IS

6   IT?

7   A.   NO, IT IS NOT.

8   Q.   AND THE INFORMATION THAT YOU GOT WHICH LEADS YOU TO BELIEVE

9   THAT THOSE TEXT MESSAGES CAME FROM MR. RAND, WERE THOSE BASED

10  ON PHONE RECORDS BEING DUMPED OFF CERTAIN CELLPHONES?

11  A.   THAT'S CORRECT.

12  Q.   AND WERE SOME OF THOSE TEXT MESSAGES RECEIVED FROM

13  MR. RAND'S PHONE?

14  A.   I WOULD HAVE TO LOOK AT THE REPORT.  BOTH THE VICTIM'S

15  PHONE AND MR. RAND'S PHONE WERE ANALYZED AND THE MESSAGES CAME

16  OFF.   IT DOES STATE WHAT NUMBER THAT THE TEXT MESSAGE

17  ORIGINATED FROM AND WHETHER IT WAS AN INCOMING OR OUTGOING TEXT

18  MESSAGE AND IT IS ATTACHED TO HIS NAME.

19  Q.   AND IN TERMS OF MR. RAND'S PHONE WERE PICTURES ALSO TAKEN

20  OFF THAT PHONE OF C.R. IN SEXUALLY EXPLICIT POSITIONS?

21  A.   AT A LATER DATE, YES.

22  Q.   NOW, REFERRING TO THOSE TEXT MESSAGES, MR. JOHANSSON HAD

23  MENTIONED SOMETHING ABOUT THE DEFENDANT SAYING, "WELL, I WASN'T

24  GOING TO DO IT."

25          ISN'T IT TRUE THAT IN THAT TEXT THAT YOU READ HE WAS

1   SAYING, "WE WEREN'T GOING TO DO ANYTHING," MEANING, "I WASN'T

2   GOING TO MAKE YOU HAVE SEX WITH ME."  IT DIDN'T SAY, "I WASN'T

3   GOING TO POST THE IMAGES," CORRECT?

4   A.  THAT'S CORRECT.

5   Q.  AND BASED ON YOUR INTERVIEW OF C.R. DID SHE BELIEVE THAT HE

6   WAS GOING TO POST THE IMAGES?

7   A.  YES.  SHE --

8         MR. JOHANSSON:  I WOULD OBJECT TO LEADING.  THERE HAVE

9   BEEN THREE OR FOUR ALREADY.

10         THE COURT:  I WILL SUSTAIN THE OBJECTION.

11   BY MS. STEINBERG:

12   Q.  DO YOU KNOW WHAT C.R.'S BELIEF WAS REGARDING MR. RAND'S

13   INTENTIONS WITH THE PHOTOS?

14   A.  SHE BELIEVED THAT HE WOULD CREATE THE WEB SITE AND POST AS

15   HE HAD CONTINUALLY THREATENED TO DO.

16   Q.  REGARDING THE CHARGES IN THE STATE CASE, DO YOU KNOW WHAT

17   THE ORIGINAL CHARGES WERE FOR?

18   A.  FOR THE CONVICTION?

19   Q.  NO.  THE ORIGINAL DATE AFTER C.R. REPORTED WHAT HAD

20   HAPPENED TO THE POLICE, DO YOU KNOW WHAT MR. RAND WAS

21   ORIGINALLY CHARGED WITH?

22   A.  I BELIEVE HE WAS CHARGED WITH LEWD AND LASCIVIOUS BATTERY.

23   Q.  AND THE ADDITIONAL CHARGES, WERE THOSE AFTER THE PHONE

24   RECORDS HAD BEEN OBTAINED AND THE INFORMATION HAD BEEN TAKEN

25   OFF THE PHONES?

1  A.  IT WAS AFTER A FORENSIC EXAMINATION HAD BEEN CONDUCTED OF

2  MR. RAND'S PHONE IN WHICH DELETED IMAGES OF CHILD PORNOGRAPHY

3  WERE RECOVERED.

4  Q.  AND WERE THE ADDITIONAL CHARGES BASED SOLELY ON THE

5  FORENSIC INFORMATION THAT HAD BEEN TAKEN OFF OF THE PHONE?

6  A.  YES.  I BELIEVE SO.

7  Q.  AND IS IT YOUR UNDERSTANDING IN SPEAKING TO THE DETECTIVE

8  THAT -- OR DO YOU KNOW WHAT THE INTERVIEW WAS LIMITED TO, THE

9  SECOND INTERVIEW OF MR. RAND?

10  A.  YES.  THAT INTERVIEW WAS RECORDED AND I DID WATCH THE

11  RECORDING.  THEY SPECIFICALLY STATED THEY WOULD NOT ASK ANY

12  QUESTIONS RELATING TO THE ORIGINAL CHARGES, BUT THIS INTERVIEW

13  WAS STRICTLY LIMITED TO THE QUESTIONS INVOLVING THE CURRENT

14  CHARGE THAT HE HAD BEEN ARRESTED FOR, THAT IS, THE CHILD

15  PORNOGRAPHY ITSELF, THE IMAGES.

16  Q.  HAVE YOU -- DID THE PEMBROKE PINES POLICE DEPARTMENT HAVE

17  AN OPPORTUNITY TO -- OR HAD YOU HAD AN OPPORTUNITY TO REVIEW

18  MR. RAND'S FACEBOOK ACCOUNT IN THE WEEKS SINCE HE WAS ARRESTED

19  ON THE STATE CHARGES?

20  A.  THERE WAS A VIEWING BY THE DETECTIVE WHO DID FORWARD ME ONE

21  OF THE PAGES.

22  Q.  AND ARE YOU ABLE TO TELL IN THOSE PAGES IF HE'S WITH GIRLS

23  OR WOMEN?

24  A.  IT APPEARS FROM PICTURES THAT WERE POSTED AND COMMENTS THAT

25  HE HAS BEEN AROUND OTHER FEMALES.  SOME OF THEM DO APPEAR TO BE

JUVENILES.

Q.  YOU DON'T KNOW FOR SURE.  ARE YOU ATTEMPTING TO LOCATE

THEM?

A.  WE ARE ATTEMPTING TO LOCATE ADDITIONAL VICTIMS AT THIS

TIME.

Q.  AND WOULD THOSE PICTURES, TO YOUR KNOWLEDGE, HAVE BEEN

POSTED SUBSEQUENT TO MR. RAND'S ARREST ON THE ORIGINAL STATE

CHARGES BOTH THE FIRST TIME AND THE SECOND TIME?

A.  IT APPEARS THAT THEY HAVE BEEN.

          MS. STEINBERG:  NO FURTHER QUESTIONS.

          THE COURT:  ANY RECROSS?

          MR. JOHANSSON:  IF I MAY, YOUR HONOR, PLEASE.

                    RECROSS EXAMINATION

BY MR. JOHANSSON:

Q.  IN THIS SECOND INTERVIEW MR. RAND ASKED THAT HIS LAWYER BE

PRESENT, CORRECT?

A.  I DON'T BELIEVE SO.

Q.  YOU MEAN THE PEMBROKE PINES POLICE DEPARTMENT DIDN'T REPORT

THAT TO YOU?

A.  I WATCHED THE RECORDED INTERVIEW.  I DON'T RECALL HIM

ASKING FOR HIS ATTORNEY DURING THAT TIME.

Q.  BEFORE THE RECORDING HE ASKED FOR HIS LAWYER BE PRESENT.

A.  NOT THAT I'M AWARE OF.

Q.  AND, IN FACT, THOSE CELLPHONES HAD BEEN SEIZED PRIOR TO THE

FIRST CHARGES, CORRECT?

```
 1   A.   I BELIEVE IT WAS AT THE TIME OF THE FIRST CHARGES.

 2   Q.   EXACTLY.  SO PRIOR TO PHYSICALLY BEING ARRESTED OR

 3   SIMULTANEOUSLY WITH BEING ARRESTED, CORRECT?

 4   A.   CORRECT.

 5            MR. JOHANSSON:  NOTHING FURTHER.

 6            THE COURT:  ALL RIGHT.  THANK YOU, AGENT.

 7            THE WITNESS:  THANK YOU.

 8            THE COURT:  LET ME ASK THE GOVERNMENT WHETHER IF THERE

 9   ARE ANY OTHER MATTERS THEY WISH TO PRESENT?

10            MS. STEINBERG:  JUST ARGUMENT, YOUR HONOR.

11            THE COURT:  ALL RIGHT.  LET'S GO THEN -- DOES THE

12   GOVERNMENT THEN REST?

13            MS. STEINBERG:  YES.

14            THE COURT:  ALL RIGHT.  LET ME GO OVER TO THE DEFENSE.

15            IF YOU WILL APPROACH THE LECTERN.

16            MR. JOHANSSON, FIRST WITH REGARD TO THE PRETRIAL

17   SERVICES REPORT WERE THERE ANY ERRORS OR MATERIAL OMISSIONS

18   THAT YOU WISH TO NOTE?

19            MR. JOHANSSON:  YES, YOUR HONOR.

20            I BELIEVE WE ARE IN AGREEMENT.  ON PAGE -- THEY ARE

21   NOT NUMBERED, BUT IT WOULD BE PAGE -- WELL, WE START WITH ONE.

22            THE COURT:  ALL RIGHT.

23            MR. JOHANSSON:  6-4-08 -- I'M SORRY.  PRIOR RECORD,

24   YOUR HONOR, PARAGRAPH FOUR.

25            THE COURT:  THAT'S ON PAGE --
```

1           MR. JOHANSSON:  THE PAGES AREN'T --

2           THE COURT:  PAGE TWO, PARAGRAPH ONE.  OKAY.  YES.

3           MR. JOHANSSON:  11-24-07, ROBBERY OF A WEAPON IS NOT

4    MR. RAND.

5           THE COURT:  OKAY.

6           MR. JOHANSSON:  THE 6-4-08 IS THE JUVENILE CASE THAT I

7    HAD BEEN REFERRING TO.

8           THE COURT:  OKAY.

9           MR. JOHANSSON:  ON THE NEXT PAGE, YOUR HONOR, THE

10   4-28-10 ATTEMPTED FIRST DEGREE MURDER --

11          THE COURT:  RIGHT.

12          MR. JOHANSSON:  -- IS NOT MR. RAND.

13          THE COURT:  OKAY.  IS THIS AN AGREEMENT BETWEEN THE

14   PARTIES?

15          MS. STEINBERG:  YOUR HONOR, I DON'T BELIEVE THOSE ARE

16   MR. RAND.

17          THE COURT:  OKAY.

18          MR. JOHANSSON:  THE 5-20-10, GRAND THEFT, THIRD DEGREE

19   IS NOT MR. RAND.

20          THE COURT:  OKAY.

21          MR. JOHANSSON:  WE TALKED ABOUT THE FIRST AND THE

22   SECOND CASE BEING FILED WITH THE STATE.  I THINK IT IS CLEAR

23   YOUR HONOR UNDERSTANDS THAT THIS FEDERAL CASE IS NOTHING BUT A

24   RECHARGING OF THAT EXACT CONDUCT AND THAT EXACT ISSUES, AND

25   THAT INCLUDES THE 4-7-11 AS WELL.  THAT'S THE CASE THAT'S

```
 1  BEFORE YOUR HONOR.

 2          THE COURT:  2-11-11, 3-20-11, AND 4-7-11.  THERE ARE

 3  ACTUALLY THREE CASES --

 4          MS. STEINBERG:  THE GOVERNMENT DOESN'T BELIEVE THE

 5  2-11-11 IS MR. RAND EITHER.

 6          THE COURT:  2-11 IS NOT.  OKAY.

 7          MS. STEINBERG:  THREE --

 8          (BOTH TALKING AT THE SAME TIME)

 9          THE COURT:  OH, I'M SORRY.

10          MS. STEINBERG:  -- AND 4-7-11 ARE.

11          THE COURT:  OKAY.

12          MS. STEINBERG:  BUT 2-11-11, AND THE AGGRAVATED

13  BATTERY (INAUDIBLE) DO NOT BELIEVE ARE MR. RAND.

14          THE COURT:  ALL RIGHT.

15          MR. JOHANSSON:  THANK YOU.  I GOT THAT BACKWARDS.

16          THE COURT:  ALL RIGHT.  SO THERE ARE THREE PREVIOUS

17  ARRESTS, 6-4-08, 3-20-11, AND 4-7-11, CORRECT?

18          MR. JOHANSSON:  CORRECT, YOUR HONOR.

19          THE COURT:  OKAY.

20          MR. JOHANSSON:  UNDERSTANDING THAT 3-20-11, 4-7-11 IS

21  THE EXACT SAME CONDUCT AT ISSUE BEFORE YOUR HONOR.

22          THE COURT:  ALL RIGHT.  DOES THE DEFENSE WISH TO

23  PRESENT ANY EVIDENCE, TESTIMONIAL OR OTHERWISE?

24          MR. JOHANSSON:  NO, YOUR HONOR.

25          THE COURT:  ALL RIGHT.  SINCE YOU ARE STANDING
```

1 | MR. JOHANSSON WHY DON'T YOU GO AHEAD AND PROCEED FIRST.

2 | MR. JOHANSSON:  YES, YOUR HONOR.

3 | THE COURT:  IF YOU WOULD APPROACH THE LECTERN.

4 | MR. JOHANSSON:  ON THE ISSUE OF FLIGHT RISK, THERE IS

5 | NO BETTER INDICATION THAN WHAT MR. RAND DID FOLLOWING BOND IN

6 | THE STATE CASE, FIVE MONTHS, CHARGES INCREASED, PRESUMABLY

7 | HIGHER PUNISHMENT, BOND POSTED AGAIN.  HE WENT NOWHERE,

8 | ABSOLUTELY NOWHERE.  SO, AS FAR AS FLIGHT RISK GOES THAT IS A

9 | NON-ISSUE.  HIS FAMILY IS HERE, HIS MOTHER, HIS FATHER, HIS TWO

10 | BROTHERS, AUNT, AND UNCLE.

11 | AS THE PRETRIAL SERVICES REPORT DISCUSSES HE HAS LIVED

12 | IN THE UNITED STATES ALL HIS LIFE, WHICH IS A WHOPPING 20 YEARS

13 | OLD.  HE LIVED IN BROOKLYN FOR A SHORT PERIOD OF TIME WHICH IS

14 | WHERE HE WAS BORN AND WHERE HIS FAMILY FROM, BUT HE HAS BEEN

15 | PREDOMINATELY HERE.  GRADUATED FROM FLANIGAN HIGH SCHOOL IN

16 | 2010.  THERE IS SUBSTANTIAL TIES TO THE COMMUNITY, AND

17 | CLEARLY -- HE ALSO HAS -- I'M SORRY.

18 | HE HAD A SHORT PROBATIONARY PERIOD WITH THE DEPARTMENT

19 | OF JUVENILE JUSTICE AFTER HIS RELEASE IN JANUARY OF 2010.  HE

20 | SERVED THAT WITHOUT ISSUE, WITHOUT ANY PROBLEMS WHATSOEVER.  SO

21 | HE IS AMENABLE TO SUPERVISION.  HE HAS --

22 | THE COURT:  WHEN DID HIS PROBATIONARY TERM END?

23 | MR. JOHANSSON:  IT HAS ALREADY ENDED, YOUR HONOR.

24 | THE COURT:  BUT WHEN DID IT END?

25 | MR. JOHANSSON:  I BELIEVE IT WAS IN MARCH OR APRIL OF

 1   2010.

 2        MS. STEINBERG:  YOUR HONOR, I BELIEVE IT WAS IN JUNE

 3   OF 2010, AND IT WOULD HAVE BEEN AFTER HE HAD ALREADY BEGUN

 4   CONTACT WITH C.R.

 5        THE COURT:  THAT WAS GOING TO BE MY NEXT QUESTION,

 6   WHETHER THE ALLEGED OFFENSE WHILE HE WAS ON PROBATION.

 7        MR. JOHANSSON:  IT WAS -- THE SENTENCE MAY HAVE BEEN

 8   SIX MONTHS PROBATION.  HE WAS -- HE WAS NOT BEING SUPERVISED,

 9   YOUR HONOR.  HE DID HIS FIRST THREE MONTHS AND THEY BASICALLY

10   TOLD HIM, "YOU DON'T NEED TO REPORT ANYMORE.  YOU DON'T NEED TO

11   DO ANYTHING ELSE."

12        I AM NOT GOING TO DISPUTE THE GOVERNMENT'S DJJ REPORT

13   THAT THEY HAVE HERE.  IT SAYS THAT THE DJJ CUSTODY WAS

14   OFFICIALLY TERMINATED ON JUNE 2ND OF 2010, BUT HE WAS NOT UNDER

15   ANY SORT OF ACTIVE SUPERVISION.  HE HAD BEEN -- FOR ALL

16   PRACTICE PURPOSES FROM A HUMAN STANDPOINT HE HAD BEEN RELEASED

17   FROM THAT PROBATIONARY PERIOD AND --

18        THE COURT:  THE INDICTMENT CHARGES BEGINNING FEBRUARY

19   OF 2010.  SO HE WOULD HAVE BEEN UNDER ACTIVE SUPERVISION AT

20   THAT TIME, CORRECT?

21        MR. JOHANSSON:  YOUR HONOR, I DIDN'T HEAR --

22        THE COURT:  I UNDERSTAND YOU'RE DENYING THE CHARGES --

23        MR. JOHANSSON:  SURE.

24        THE COURT:  -- AND DISPUTING THEM, BUT AS CHARGED THE

25   CHARGE OVERLAPS THE PERIOD OF HIS PROBATION, CORRECT?

 1      MR. JOHANSSON:  THERE IS ALWAYS THE -- THERE IS ALWAYS

 2 THE BROAD "ON OR ABOUT" LANGUAGE.  I WOULD CLEARLY -- FIRST OF

 3 ALL, IT IS THE GOVERNMENT'S BURDEN.  I DIDN'T SEE EVIDENCE

 4 GIVING A PARTICULAR DATE THAT IT OVERLAPPED.

 5      THE CONTACT, WHAT THEY BELIEVE IS WHEN THE CONTACT

 6 OCCURRED, LEGAL WHICH THEY DO ADMIT INITIALLY MAY HAVE BEGUN IN

 7 FEBRUARY OF 2010.  BUT I DIDN'T HEAR ANYTHING ILLEGAL

 8 SPECIFICALLY ON THOSE DATES.

 9      THE COURT:  WELL, I GUESS WHAT I'M REFERRING TO IS ON

10 PAGE FOUR, TOP OF PAGE FIVE WHERE THE DEFENDANT ADMITTED THAT

11 HE BEGAN COMMUNICATING WITH HER VIA TEXT MESSAGE SHORTLY AFTER

12 RELEASE FROM JAIL IN 2010, AND PROGRESSED OVER TIME FROM

13 INNOCENT PICTURES TO THESE I GUESS REFERRING TO THE SEXUALLY

14 EXPLICIT PICTURES.

15      MR. JOHANSSON:  I WOULD ARGUE TO YOUR HONOR THAT THE

16 CONTACT MAY HAVE OCCURRED IN FEBRUARY 2010 BUT NOTHING ILLEGAL

17 OCCURRED WHILE HE WAS ON DJJ SUPERVISION.

18      AS FAR AS THE DANGER TO THE COMMUNITY ASPECT OF IT,

19 YOUR HONOR, I THINK IT'S AN ISOLATED EVENT.  IT IS NOT A

20 PREDATOR WHO IS FISHING AROUND ON THE INTERNET SEARCHING FOR

21 CHILDREN.  HE IS 20 YEARS OLD.  YOUR HONOR CAN CLEARLY SEE

22 THERE IS A VERY SCARED YOUNG BOY SITTING THERE.

23      I REALIZE THE LAW CONSIDERS HIM THE AGE OF MAJORITY,

24 BUT THE MATURITY LEVEL AND EVEN THE PHYSICAL ASPECTS OF

25 MR. RAND THE COURT CAN CERTAINLY TAKE THAT INTO ACCOUNT.  WE

 1  DON'T HAVE A 55 YEAR OLD MAN SITTING HERE WHO IS FOOLING AROUND

 2  ON THE INTERNET SEARCHING FOR 14 YEAR OLD GIRLS.  THIS

 3  RELATIONSHIP BEGAN BECAUSE HE WAS FRIENDS WITH THE GIRL'S OLDER

 4  BROTHER.

 5        THE COURT:  HOW DO YOU ARGUE THAT IT IS AN ISOLATED

 6  INCIDENT IF HE ALREADY HAS A PRIOR JUVENILE ADJUDICATION FOR

 7  THE OFFENSES REFLECTED HERE IN THE PRETRIAL SERVICES REPORT?

 8        MR. JOHANSSON:  AND I UNDERSTAND YOUR HONOR'S

 9  POSITION.  I WOULD ARGUE TO THE COURT THAT THAT IS SOMETHING

10  THAT OCCURRED PREVIOUSLY AND THAT THIS IS SEPARATE AND THAT IN

11  TERMS OF RELEASING HIM ON BOND I'M SURE YOUR HONOR IS

12  CONCERNED --

13        THE COURT:  WOULDN'T THIS BE SEXUALLY REPEAT BEHAVIOR?

14        MR. JOHANSSON:  IN THE SENSE THAT HE WAS A JUVENILE AT

15  THE TIME, THERE IS THIS CLOAKING OF JUVENILES THAT THEY DON'T

16  UNDERSTAND THINGS.  THEIR BRAINS CAN'T FUNCTION.  THEY CAN'T

17  CONSENT.  THEY DON'T UNDERSTAND WHAT THEY'RE DOING, AND THE LAW

18  TAKES THAT VERY SERIOUSLY.  WHILE MR. RAND WAS THAT JUVENILE,

19  HE WAS THAT MINOR, HE WAS THAT PERSON.

20        THE COURT:  JUST PULL THE MICROPHONE OVER.

21        MR. JOHANSSON:  SO I WOULD ASK YOUR HONOR TO TAKE THAT

22  CLOAK OF JUVENILE STATUS US INTO ACCOUNT AS TO WHAT OCCURRED

23  BEFORE.

24        ALSO, YOUR HONOR, I'M SURE YOU'RE AWARE IN OUR HIGH

25  SCHOOLS HERE IN BROWARD COUNTY THERE HAVE BEEN NUMEROUS

 1  FANCIFUL PICTURES THAT KIDS ARE SENDING EACH OTHER BOTH AGE OF

 2  MINORITY TO ONE ANOTHER, AND OUR FLORIDA LEGISLATURE IS IN THE

 3  PROCESS, AND THERE IS A BILL PENDING, SAYING, "WELL, WE CAN'T

 4  POSSESS CHILD PORNOGRAPHY IF YOU ARE A CHILD."

 5       THE COURT:  WELL, LET ME ASK YOU THIS BECAUSE IT

 6  APPEARS THAT ON THE FACTS THAT HAVE BEEN PRESENTED TO ME IT IS

 7  NOT ONLY A CONTINUATION OF THAT BEHAVIOR, BUT YOU ALSO HAVE THE

 8  THREATS, AND YOU ALSO HAVE IT IS ALLEGED THE VIOLENT SEXUAL

 9  BATTERY, A RAPE, WHICH I WOULD THINK NOTWITHSTANDING HIS AGE HE

10  WOULD UNDERSTAND THE DIFFERENCE BETWEEN RIGHT AND WRONG.

11       HOW DO YOU ARGUE THAT -- HOW DO YOU OVERCOME THE

12  PRESUMPTION, BECAUSE THE STATUTE BRINGS A PRESUMPTION THAT HE

13  IS A DANGER TO THE COMMUNITY.  HOW DO YOU OVERCOME THE

14  PRESUMPTION IN LIGHT OF THESE CHARGES INCLUDING THE THREATS,

15  AND I SEE THAT THERE WAS PREVIOUSLY A THREAT IN THAT 2008 CASE,

16  AND THE RAPE?

17       MR. JOHANSSON:  YOUR HONOR, FIRST OF ALL, WHILE A

18  RELATIONSHIP MAY HAVE EXISTED, AND AS I THINK WE HAVE

19  SUFFICIENTLY PRESENTED ON CROSS-EXAMINATION, THIS IS A 14 YEAR

20  OLD GIRL WHO IS ABSOLUTELY ENAMORED WITH HIM.

21       THE COURT:  WELL, I DON'T KNOW IF THERE WAS ANY -- YOU

22  ASKED AND I THINK THE WITNESS DENIED IT, BUT -- ALL RIGHT.  BUT

23  ASSUMING THAT YOUR CLIENT WERE TO TESTIFY AND THAT WOULD BE HIS

24  TESTIMONY, AND HE DID NOT TESTIFY, BUT GO AHEAD AND MAKE YOUR

25  ARGUMENT.

 1          MR. JOHANSSON:  I WAS SAYING, YOUR HONOR, THAT IT DID

 2   NOT OCCUR, THAT ANY THREATS THAT WERE TAKEN OUT OF CONTEXT

 3   FIRST OF ALL WERE DONE TO MAKE HER GO AWAY, AND THE IMAGES THAT

 4   WERE RECEIVED WERE UNSOLICITED.

 5          THE COURT:  WHAT ARE YOU ALLEGING DID NOT OCCUR, THE

 6   SEXUAL INTERCOURSE WITH THE GIRL?

 7          MR. JOHANSSON:  CORRECT.

 8          THE COURT:  WELL, I THOUGHT THERE WAS EVIDENCE THAT

 9   THEY ACTUALLY RECOVERED THROUGH THE HOSPITAL EXAMINATION SEMEN

10   SAMPLES, AND THAT -- I GUESS THEY ARE DOING THE DNA RIGHT NOW,

11   BUT LET ME GO BACK TO YOUR CLIENT'S STATEMENTS.

12          ALL RIGHT.  WHAT IT SAYS HERE IS I GUESS ON PAGE THREE

13   THAT WHEN FIRST -- WHEN HE WAS INTERVIEWED BY PEMBROKE PINES HE

14   DENIED HAVING ANY KIND OF RELATIONSHIP OR EVER HAVING SEX WITH

15   HER.  AT SOME POINT HE ADMITTED THAT HE'S NOT BEING TRUTHFUL,

16   AND HE DID SO BECAUSE HE WAS AFRAID OF HIS PAST CONVICTION.

17          I WILL ASK THE GOVERNMENT TO CLARIFY WHAT EXACTLY HE

18   ADMITTED TO.  I DON'T KNOW.

19          MR. JOHANSSON:  AT THE BOTTOM OF PAGE FOUR, YOUR

20   HONOR, C.R. SENT HIM PICTURES WITHOUT BEING ASKED, AND SHE DID

21   SO BECAUSE SHE WAS, QUOTE, UNQUOTE, "INTO HIM AND WANTED TO

22   KEEP HIS INTEREST."

23          THE COURT:  THIS IS THE DEFENDANT'S VERSION.

24          MR. JOHANSSON:  CORRECT.

25          THE COURT:  ALL RIGHT.  PLEASE CONTINUE.

     1          MR. JOHANSSON:  THAT'S ALL I HAVE, YOUR HONOR.

     2          THE COURT:  ALL RIGHT.  LET ME HEAR FROM THE

     3  GOVERNMENT.

     4          MS. STEINBERG:  THANK YOU.

     5          THE COURT:  FIRST IF YOU WOULD APPROACH THE LECTERN,

     6  PLEASE.

     7          MS. STEINBERG:  YES, I WILL.

     8          THE COURT:  FIRST ADDRESS THE ISSUE OF FLIGHT AND THEN

     9  DANGER.

    10          MS. STEINBERG:  AND JUST TO ADDRESS THE ONE ISSUE YOUR

    11  HONOR HAD JUST RAISED.  WE DON'T BELIEVE -- THE GOVERNMENT IS

    12  NOT ASSERTING THAT MR. RAND EVER ADMITTED THAT HE HAD SEX WITH

    13  C.R.  SO JUST SO THAT'S CLEAR.

    14          THE COURT:  OKAY.

    15          MS. STEINBERG:  HE AT FIRST SAID HE DIDN'T EVEN KNOW

    16  HER, HAD NO RELATIONSHIP WITH HER, NEVER TEXTED WITH HER, AND

    17  THEN DENIED THAT AND SUBSEQUENTLY CHANGED HIS STORY BUT HE

    18  NEVER ADMITTED TO THE SEX.  WE DID FIND THE SEMEN SAMPLE IN THE

    19  14 YEAR OLD VAGINA AND THAT IS WHAT IS NOW BEING TESTED.

    20          THE COURT:  TO MATCH UP --

    21          MS. STEINBERG:  TO MATCH UP WITH THE DEFENDANT'S WHOSE

    22  SAMPLE IS ON RECORD FROM HIS PREVIOUS CONVICTION.

    23          THE COURT:  ALL RIGHT.

    24          MS. STEINBERG:  REGARDING RISK OF FLIGHT, YOUR HONOR,

    25  WE ARE NOT ARGUING ON THAT PRONG.

1              THE COURT:  OKAY.

2              MS. STEINBERG:  WE DON'T BELIEVE HE IS A RISK OF

3    FLIGHT AND WE BELIEVE HE HAS FAMILY HERE AND THAT HE PROBABLY

4    WOULD NOT FLEE.  HOWEVER, THE GOVERNMENT DOES NOT BELIEVE THAT

5    THERE IS A SINGLE CONDITION THAT THIS COURT CAN SET THAT WOULD

6    KEEP THE CHILDREN IN OUR COMMUNITY SAFE FROM THIS DEFENDANT WHO

7    DESPITE WHAT HIS COUNSEL MIGHT STATE IS A PREDATOR OF THE WORST

8    KIND.

9              HE MAY NOT BE A 50 YEAR OLD MAN SITTING HERE, BUT THAT

10   IN MANY WAYS MAKES HIM MORE DANGEROUS.  HE IS A 20 YEAR OLD WHO

11   CAN BEFRIEND YOUNG GIRLS WHO CAN FEEL SAFE WITH HIM AND

12   COMFORTABLE WITH HIM BECAUSE THEY THINK, "WOW, THIS 20 YEAR OLD

13   IS GIVING ME ATTENTION," WHICH IS EXACTLY WHAT HAPPENED IN THIS

14   SPECIFIC CASE WITH C.R., AND IN HIS PRIOR CASE WHERE HIS

15   VICTIMS RANGED IN AGE FROM 11, TO 13, TO 15.

16             IN TERMS OF CLOAKING JUVENILES IN SOME COAT IN NOT

17   KNOWING WHAT THEY'RE DOING, MR. RAND IS AN ADULT IN THIS CASE.

18   C.R. IS THE JUVENILE.  HE IS TASKED WITH KNOWING BETTER, SHE IS

19   NOT.

20             THERE MAY BE SOME ARGUMENT THAT AT SOME POINT C.R.

21   UNSOLICITED SENT THESE PICTURES.  HER STORY HAS BEEN

22   CONSISTENT.  SHE NEVER SENT A PICTURE WITHOUT BEING ASKED.  AT

23   SOME POINT, AND IT IS VERY CLEAR FROM THE TEXT MESSAGES, SHE

24   WANTED TO STOP SENDING THOSE PICTURES AND THE DEFENDANT DID NOT

25   ALLOW HER TO, NOR DID HE ALLOW HER TO KEEP FROM HAVING FACE TO

 1  FACE CONTACT WITH HER BECAUSE HE THREATENED TO OUT HER PICTURES

 2  ON THE WEB AND PROVIDE LINKS TO HER FATHER SO HE COULD RUIN HER

 3  LIFE.

 4          IN TERMS OF DANGER, YOUR HONOR, THIS IS A PERSON WHO

 5  SERVED -- GOT A VERY LIGHT SENTENCE AS A JUVENILE.  AND MAYBE

 6  THERE WAS SOME THINKING THAT, "YOU KNOW WHAT?  HE'S A JUVENILE.

 7  HE'LL LEARN.  LET'S GET HIM SOME TREATMENT AND LET'S SEE IF HE

 8  CAN REHABILITATE HIMSELF."

 9          SO THIS IS AN INDIVIDUAL WHO UNLIKE MANY OTHERS WHO

10  COME BEFORE YOU ON SIMILAR TYPES OF CASES HAS HAD AN

11  OPPORTUNITY TO GET TREATMENT, AND WHO HAS FACED THE CRIMINAL

12  JUSTICE SYSTEM BEFORE KNOWING THIS IS A SERIOUS MATTER AND IT

13  WILL NOT BE TOLERATED IN OUR SOCIETY.

14          THIS DEFENDANT GETS OUT OF CUSTODY IN JANUARY OR

15  FEBRUARY OF 2010 AND IMMEDIATELY, ACCORDING TO C.R., BEGINS A

16  RELATIONSHIP WITH HIM, AND ACCORDING TO C.R. WHOSE STORY NEVER

17  CHANGED.  HE BEGAN REQUESTING THE NAKED PHOTOS OF HER WITHIN

18  ONE MONTH OF HIS RELEASE.  ONE MONTH, YOUR HONOR.  AND THERE IS

19  EVIDENCE THAT THE DEFENDANT WAS STILL UNDER COURT SUPERVISION

20  AT THAT TIME BECAUSE I'VE SHOWN DEFENSE COUNSEL TWO SEPARATE

21  DOCUMENTS, BOTH OF WHICH SHOW THAT THE ORDER TERMINATING

22  SUPERVISION WAS NOT SIGNED UNTIL JUNE 2ND OF 2010.

23          SO THIS IS AN INDIVIDUAL WHO HAS GOTTEN COUNSELING,

24  WHO SHOULD HAVE KNOWN BETTER, AND WHO IS OUT LESS THAN A MONTH

25  AND WHO BEGINS THE EXACT SAME CONDUCT THAT HE ENGAGED IN A YEAR

 1 | PRIOR WITH AN 11 YEAR OLD, A 13 YEAR OLD, AND A 15 YEAR OLD.

 2 | THIS IS NOT JUST SOME INNOCENT RELATIONSHIP BETWEEN

 3 | TWO PEOPLE.  THIS IS THREATS, AND THIS IS WHAT MAKES THIS CASE

 4 | SO DANGEROUS AND WHY THIS DEFENDANT IS SUCH A DANGER BECAUSE

 5 | THIS VICTIM CANNOT BE SAFE FROM THIS DEFENDANT IF HE HAS THE

 6 | ABILITY TO USE MEANS OF COMMUNICATION TO PUT HER IN ABSOLUTE

 7 | FEAR.

 8 | ON TOP OF THAT, YOUR HONOR -- DO YOU HAVE AN

 9 | OBJECTION?

10 | MR. JOHANSSON:  YOUR HONOR, I HAVE HEARD NO TESTIMONY

11 | WHATSOEVER, I HAVE SEEN NOTHING IN THE PROFFER ABOUT AN 11 AND

12 | A 15 YEAR OLD, AND NOW I'M SUDDENLY HEARING ARGUMENT.  I WOULD

13 | OBJECT TO ANY (INAUDIBLE) ABOUT A 15 YEAR OLD.

14 | THE COURT:  I GUESS THE GOVERNMENT IS PROFFERING WHAT

15 | THE AGES WERE.  I TAKE IT, IT'S IN THE POLICE RECORDS FROM THE

16 | PREVIOUS --

17 | MS. STEINBERG:  IT IS.  I HAVE THEM TOO, YOUR HONOR.

18 | THE COURT:  ALL RIGHT.  I MEAN, IS THAT GOING TO BE

19 | DISPUTED --

20 | MR. JOHANSSON:  I DON'T KNOW ABOUT AN 11 OR 15 YEAR

21 | OLD AT ALL.

22 | THE COURT:  I WILL TAKE A LOOK AT THE POLICE RECORDS

23 | IF THERE IS ANY DISPUTE, BUT I THINK MISS STEINBERG -- I MEAN,

24 | IT WOULD BE A BETTER OF ESTABLISHED JUDICIAL FACT, AND I TAKE

25 | HER AT HER WORD IF SHE PROFFERS THAT.  BUT IF THERE IS A

1  QUESTION I WILL READ THE REPORT.

2        MR. JOHANSSON:  AND WE ARE TALKING ABOUT AN 11 AND A

3  15 YEAR OLD FROM THE JUVENILE CASE.

4        MS. STEINBERG:  YES.

5        MR. JOHANSSON:  OKAY.

6        MR. JOHANSSON:  (INAUDIBLE)

7        MS. STEINBERG:  ELEVEN, 13 --

8        THE COURT:  ELEVEN, 13 AND 15.

9        MS. STEINBERG:  -- AND 15.

10        THE COURT:  ALL RIGHT.

11        MS. STEINBERG:  AND IN THIS CASE ALTHOUGH WE HAVE

12  C.R., YOUR HONOR, WHO HAS COME FORWARD AND WHO IS 14, AS HAS

13  BEEN STATED IN THE PROFFER THERE WERE NUMEROUS NAKED IMAGES OF

14  YOUNG FEMALES THAT WERE TAKEN OFF OF MR. RAND'S PHONE.  THERE

15  WERE OVER 200 IMAGES OF CHILD PORNOGRAPHY ON HIS PHONE.

16        WHEN MR. RAND WAS INTERVIEWED HE SPECIFICALLY SAID HE

17  DOESN'T ENJOY IT UNLESS HE KNOWS THE GIRL.  THERE ARE 200

18  IMAGES ON HIS PHONE AND LAW ENFORCEMENT IS IN THE PROCESS OF

19  TRYING TO LOCATE THOSE VICTIMS.

20        IT IS ESSENTIAL THAT THEY FEEL SAFE, AND THAT THE

21  DEFENDANT NOT BE ALLOWED TO CONTACT THEM WHILE LAW ENFORCEMENT

22  TRIES TO FIND THEM.  MR. RAND KNOWS WHO THEY ARE AND THAT'S

23  ANOTHER REASON WHY IT IS IMPORTANT THAT HE STAY IN CUSTODY.

24        ALSO ON MR. RAND'S PHONE, AS IS STATED IN THE PROFFER,

25  THERE WERE SEVERAL VIDEO CLIPS THAT APPEAR TO BE TAKEN AT SOME

1  KIND OF GAME ROOM OR ARCADE.  MR. RAND WAS THERE WITH A FRIEND

2  AND THERE ARE SEVERAL VIDEO CLIPS OF A GIRL WHO APPEARS TO BE

3  UNDER THE AGE OF SIX, YOUR HONOR, WHO IS RISING ON SOME KIND OF

4  HORSE -- ELECTRONIC HORSE, AND THE VIDEO CLIPS ARE OF THIS

5  CHILD'S UNDERPANTS AS SHE RIDES BACK AND FORTH ON THE HORSE.

6          THERE ARE ALSO IMAGES ON MR. RAND'S PHONE OF SOMEONE

7  IN A SHOWER, A FEMALE IN A SHOWER, AND A VIDEO BEING TAKEN

8  THROUGH A CRACK IN THE DOORWAY.  LAW ENFORCEMENT BELIEVES

9  THAT'S MR. RAND'S ROOMMATE WHO IS 19 SO IT IS NOT A MINOR.

10  HOWEVER, IT IS SURREPTITIOUS FILMING.

11          YOUR HONOR, CAN SEE WHEN I SHOW YOU THE PRIOR POLICE

12  REPORT THAT THERE WAS ALLEGATIONS OF SURREPTITIOUS FILMING OF

13  MINORS IN THE PRIOR CASE.  SO THIS IS A DEFENDANT WHO BEFRIENDS

14  YOUNG GIRLS, ENCOURAGES THEM TO SEND HIM NAKED PICTURES,

15  THREATENS TO EXTORT THEM WITH THE PICTURES.  IN THIS CASE THE

16  GOVERNMENT ASSERTS RAPES THE GIRL BY CONVINCING HER TO COME

17  MEET HIM BY HOLDING THOSE PICTURES OVER HER HEAD.

18          HE'S ALSO FILMING YOUNG INNOCENT CHILDREN IN AN ARCADE

19  WHERE THEIR PARENTS WOULD HAVE NO IDEA THAT SOMEONE IS FILMING

20  THEIR CHILDREN.  THERE IS JUST NOTHING, YOUR HONOR, THAT THIS

21  COURT CAN DO, ELECTRONIC MONITORING, ANYTHING THAT THIS COURT

22  COULD SET WHICH WOULD GUARANTEE THE SAFETY OF THE CHILDREN IN

23  THIS COMMUNITY FROM THIS 20 YEAR OLD WHO IS A PREDATOR, AND WE

24  WOULD ARGUE THAT IN THIS CASE DETENTION IS ABSOLUTELY

25  NECESSARY.

1      THE COURT:  MR. JOHANSSON, I WILL GIVE YOU THE LAST

2  OPPORTUNITY IF YOU WISH.

3      MR. JOHANSSON:  I APPRECIATE IT, YOUR HONOR.

4      THESE OTHER PHOTOS OF MINORS, THERE IS ZERO

5  CONFIRMATION THAT THEY ARE MINORS.  SO I WOULD ASK THE COURT TO

6  IGNORE THAT.

7      THE RIDING THE HORSE PART, I HAVEN'T HEARD ANY

8  TESTIMONY FROM THE AGENT THAT THEY ARE SEXUALLY EXPLICIT.  THEY

9  VERY WELL COULD BE -- WHO KNOWS WHAT'S GOING ON.  IT DOESN'T

10  SOUNDS TO ME LIKE SEXUALLY EXPLICIT AND THAT'S ALWAYS IMPORTANT

11  FOR IT TO BE CHILD PORNOGRAPHY.

12      AND SURREPTITIOUS FILMING OF A GIRLFRIEND WHO LIVES IN

13  YOUR HOUSE, THAT ASSUMES THAT THE GIRLFRIEND DIDN'T KNOW WHAT'S

14  GOING ON, AND THAT'S A VERY LARGE ASSUMPTION.  I THINK THAT'S

15  UNFAIR TO CONSIDER TOO WITHOUT SOME EVIDENCE THAT THAT, QUOTE,

16  UNQUOTE, VICTIM, WHO IS NOT A VICTIM BECAUSE SHE IS 19,

17  SURREPTITIOUSLY MADE.  DID SOMEBODY ASK HER?  NO.  SO I WOULD

18  ASK THE COURT NOT TO CONSIDER THAT EITHER.

19      THE COURT:  LET ME THANK THE ATTORNEYS, MISS STEINBERG

20  ON BEHALF OF THE GOVERNMENT, AND MR. JOHANSSON ON BEHALF OF

21  MR. RAND FOR PRESENTING THEIR ARGUMENTS VERY WELL ON BEHALF OF

22  THEIR RESPECTIVE CLIENTS.

23      THE COURT IS GOING TO GO AHEAD AND GRANT THE

24  GOVERNMENT'S PETITION AND WILL FOLLOW WITH A WRITTEN ORDER.

25      LET ME ASK IF THE GOVERNMENT OR THE DEFENSE HAS ANY

```
 1  OTHER MATTERS AS TO MR. RAND THAT THEY WISH TO RAISE?

 2          MS. STEINBERG:  NOT FROM THE GOVERNMENT, YOUR HONOR.

 3          THE COURT:  AND FROM THE DEFENSE?

 4          MR. JOHANSSON:  NOTHING FURTHER, YOUR HONOR.

 5          THE COURT:  MR. RAND, DO YOU HAVE ANY QUESTIONS THAT I

 6  CAN ANSWER EITHER ABOUT WHAT WE HAVE DONE TODAY OR ABOUT WHAT

 7  WILL BE OCCURRING NEXT IN YOUR CASE?

 8          THE DEFENDANT:  NO, SIR.

 9          THE COURT:  OKAY.  VERY WELL.

10                          - - -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2

3                       C E R T I F I C A T E

4

5

6  UNITED STATES OF AMERICA

7  SOUTHERN DISTRICT OF FLORIDA

8

9

10         I, CARL SCHANZLEH, OFFICIAL COURT REPORTER OF THE UNITED

11  STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, DO

12  HEREBY CERTIFY THAT THE FOREGOING 42 PAGES CONSTITUTE A TRUE

13  TRANSCRIPT OF THE PROCEEDINGS HAD BEFORE THE SAID COURT HELD IN

14  THE CITY OF FORT LAUDERDALE, FLORIDA, IN THE MATTER THEREIN

15  STATED.

16         IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS 5TH

17  DAY OF MARCH 2012.

18

19                         /S/CARL SCHANZLEH
                           CARL SCHANZLEH, RPR-CM
20                         OFFICIAL FEDERAL COURT REPORTER
                           299 EAST BROWARD BLVD., 202B
21                         FORT LAUDERDALE, FL  33301
                           TELEPHONE 954/769-5488
22

23

24

25